HARTFORD FIRE INSURANCE COMPANY *v.* DAVID J. SHLENKER.

1. FIRE INSURANCE. *Valued policy law. Laws 1894, ch. 63. Amended laws 1896, ch. 56. Changeable property.*

> Under laws 1894, ch. 63, as amended, laws 1896, ch. 56, known as the valued policy law, regulating recoveries of losses on fire insurance policies, the insured is entitled to recover:
>
> (*a*) For a total loss of property, except personalty constantly changing in specifics and quantity, the amount named in the policy on which premiums have been calculated and collected, being an agreed value, is binding on the insurer without reference to other insurance.
>
> (*b*) For a partial loss of property, except personalty constantly changing in specifics and quantity, the amount of actual damage not to exceed the amount of the policy, the insurer being liable according to the extent of the damage, on the basis of the amount on which premiums have been calculated and collected.
>
> (*c*) For losses on personalty constantly changing in specifics and quantity, the actual value of the property destroyed, not exceeding the amount of the policy, the insurer being liable on the basis of the amount on which premiums have been calculated and collected.

2. SAME. *Coinsurance. Three-quarters clause.*

> Coinsurance clauses, three-quarters clauses, and other like clauses in fire insurance policies, must yield to the statute.

3. SAME. *Waiver.*

> A provision in a fire insurance policy, by which the insured undertook to agree to waive the statute, is ineffectual.

4. SAME.   *Separate policies.*

> In case of a total loss of property, other than personalty constantly changing in specifics and quantity, the insured can recover of each insurer the full amount of his policy; but in case of partial loss, and in case of loss on personalty constantly changing in specifics and quantity, he can recover only his actual loss.

FROM the circuit court of Warren county.

HON. GEORGE ANDERSON, Judge.

Shlenker, appellee, was plaintiff in the court below; the insurance company, appellant, was defendant there.   The suit was upon a fire insurance policy covering cotton in bales contained in certain cotton yards in Vicksburg, Miss.   The policy sued on contained the following stipulations: "In consideration of the mutually agreed reduction of one per centum per annum at which this policy is issued, the assured agree to waive any and all benefit that may be claimed under an act of the legislature of Mississippi known as 'House Bill No. 702,' approved March 20, 1896; and it is understood, agreed, and warranted by the assured that the basis for adjustment of any claim for loss or damage to the property covered by this insurance shall not exceed the actual cash market value of such property at the time of the loss, and at the place of the fire, which cash market value shall in no event be greater than it would then and there cost to replace the property damaged or destroyed with property of the same kind and quality.   And it is further understood, agreed, and warranted by the assured to maintain insurance to an amount not less than the cash value of the whole property hereby insured, and that in case of loss under this policy this company shall be liable only for such proportion of the whole loss which shall not exceed the actual market value as above provided as the amount of this insurance bears to the cash market value of the whole property hereby insured at the time of the fire.   Now, therefore, in consideration of said reduction in rates, the assured do hereby covenant and agree with the Hartford Fire Insurance Company that,

in case this warranty and agreement shall at any time be violated, they do hereby declare themselves liable to the Hartford Fire Insurance Company for any loss or damage which may result to said Hartford Fire Insurance Company by reason of breach of this warranty; it being clearly understood that this policy of insurance is based on this agreement, and its validity depends upon the performance of this obligation."

The suit was for $2,000, the amount of the policy, and the declaration alleged that there was $15,000 worth of cotton in the yards at the time of the fire, which destroyed over $4,000 worth of it. Defendant filed several separate pleas, raising the following questions: (1) By the terms of the policy the insurance company was not responsible for the whole amount named in the policy, but only to the extent of the proportion which the amount named in the policy might bear to the whole amount of the value of the property insured; (2) that the stipulation that the insured would maintain insurance upon the property to its full value was a vital condition upon which the policy was issued, and that by failure to maintain such full insurance the policy became void; (3) that the insured became bound to make good any loss or damage which might result to the company by reason of his failure to maintain full insurance; (4) the property insured was constantly changing in specifics, quantity, and value in the usual course of trade, and that for this reason the policy was not subject to the valued policy provisions of the law of 1896. Plaintiff demurred to these several pleas. The demurrer was sustained, to which defendant excepted, and declined to plead further, whereupon a judgment was rendered for plaintiff for the amount sued for and interest. From that judgment defendant appealed to the supreme court.

*E. J. Bowers* and *Catchings & Catchings,* for appellant.

The amount named in the policy is the maximum liability of the insurer. The contract being one of indemnity, the amount

named in the policy does not furnish the measure of damages for which the insured shall recover, but merely fixes the limit beyond which he cannot recover.

In case of damage or destruction, the amount of damages or the value of the property destroyed must be ascertained, and this being done, the insurer becomes liable for the amount so ascertained, not to exceed the limit fixed in the policy. This is because the contract being merely one of indemnity, the only recovery allowable is for the actual value of the property destroyed. What we have said, of course, relates to an ordinary contract of insurance, when not qualified by special stipulations, or controlled by statutory limitations or conditions. What we have said, also does not apply to that class of insurance contracts known to the law as valued policies. "Valued policies" are as ancient as the law of insurance itself, and rest upon principles entirely different from those which govern ordinary, or what the law designates as "open policies."

In the case of *Patapsco Ins. Co.* v. *Biscoe,* 7 Gill. & Johnson, 293, s.c., 28 Am. Dec., 219, the supreme court of Maryland, in discussing the law governing valued policies, uses the following language: "That the valuation, unless a fraudulent one, is always binding and conclusive upon the parties, and that unless it be a case of fraud the valuation agreed upon estops the parties from looking behind it for the purpose of changing the legal operation of the contract. In case of claim for a total loss upon such a policy, the only legitimate inquiry is: Has such a loss occurred, and has it been occasioned by one of the perils insured against, while the policy was operating upon the subject matter insured by it? Upon any other principle of construction, it would be divested of all the attributes of a valued policy, and the door would be open to inquiries unwarranted by the solemn agreement of the parties, and which is only admissible in the case of an open one. It would be subjecting the insured to all the delay, expense, and incon-

venience which the valuation of the policy was intended to prevent, and would be at war with the best established principles of the law of insurance."

In other words, a valued policy is simply a contract of insurance by which the parties agree in advance that the amount to be paid in case of total loss shall be the amount named in the policy. Under such a contract, in case of total loss, no inquiries can be made for the purpose of ascertaining the value of the property destroyed, but the insurer becomes liable without regard to its value for the amount designated in the policy. Even, however, where a valued policy has been issued, the amount fixed in the policy is only intended to be, so far as the parties to the contract are concerned, the value of the whole property. It is, therefore, only where a whole property is destroyed that the insurer is bound to pay the whole sum named in the policy. Where the property is only partially destroyed, valued policies are treated precisely as though they were open policies, and before the insurer can be called upon to pay, the loss or damage incurred must first be ascertained. When it has been ascertained, he must pay, provided that in no event can he be required to pay a sum greater than that fixed in the policy. In other words, where the loss is not total, a valued policy becomes in law and in fact simply an open policy. *Clark v. United Ins. Co.,* 7 Mass., 365, s.c., 5 Am. Dec., 50.

By the terms of that law all insurance contracts, except those relating to stocks of goods and merchandise, and other species of personal property where the same after the issuance of the policy is constantly changing in specifics and quantity, in the usual course of trade, are made and constituted valued policies, which are to be governed by the law pertaining to valued policies created by voluntary agreement as we have heretofore stated it to be.

If the legislature had simply declared that all policies of insurance, except those relating to losses on stocks of goods and merchandise, and other species of personal property where the

same after the issuance of the policies is constantly changing in specifics and quantity in the usual course of trade, should be held and construed to be valued policies, it would have accomplished the same purpose precisely which it designated to accomplish, and which it did accomplish, by the law of 1896 as it is written.

The legislature simply made policies, other than those of the excepted class, where the loss was total, valued policies, subject to the law as laid down by the supreme court of Maryland in the case of *Patapsco Ins. Co.* v. *Biscoe,* 7 Gill. & Johnson, 283, and where the loss was partial "open policies" according to the law as laid down by the supreme court of Massachusetts in *Clark* v. *United Insurance Co.,* 7 Mass., 365, s.c., 5 Am. Dec., 50, 219. Except as to certain policies on personal property constantly changing in specifics and quantity in the usual course of trade, all stipulations, no matter what, which seek to relieve the insurer in case of total loss from liability for the whole amount named in the policy, and which seeks to relieve the insurer in case of partial loss from liability for the full amount of damages, not to exceed the amount written in the policy as properly held by this court in *Assurance Co.* v. *Phelps,* 77 Miss., 657, are nugatory and void. We do not complain of that decision, but, on the contrary, accept it as correct and sound. That decision does no more than to declare, as the statute itself did no more than to declare, that all stipulations in policies of insurance (except such as are issued upon changeable property), which have for their object to reduce the liability of the insurer below the amount named, in case of total loss, or below the actual damages, in case of partial loss, are nugatory and void.

Neither the statute nor the opinion of this court condemns stipulations which do not have such purpose. There are many considerations which do not conflict with the statute, and which, when made, will be upheld as valid.

Inasmuch as the policy in controversy in this case does not

come within the valued policy provisions of the law of 1896, it is unnecessary to say much more with regard to them. This policy comes under that provision of the statute which declares "in case of losses on stocks of goods and merchandise and other species of personal property where the same, after the issuance of the policy, is constantly changed in specific and quantity in the usual course of trade, only the actual value of the property at the time of the loss may be recovered not to exceed the amount expressed in the policy." This provision of the statute was not invoked in any particular in the Phelps case, and has never been construed by this court either directly or indirectly.

The evil which was intended to be cured by so much of the statute of 1896 as was construed in the Phelps case was the supposed disposition of insurance companies to agree upon a value in the policy and collect premiums upon it, and then, in case of loss, to deny that the value stated was the correct one, and provoke harrassing litigation to the annoyance and detriment of the insured. The purpose was to get rid of the evil by binding the insurer once and for all to pay the amount named in the policy, and to convert such policies in all particulars into valued policies.

The legislature fully understood, however, that as to personal property which was constantly being changed in specifics and quantity in the usual course of trade, such evil, even if it existed, could not be eliminated by the statute, for the reason that insurers would either absolutely decline to issue valued policies upon such property at all, or would issue them for such a small amount as that nothing approaching true indemnity could be secured by the insured.

The legislature, in attempting to cure the evil suggested, confined itself to policies of insurance upon property which was not constantly changing in specifics and quantity, and left policies of insurance as to property constantly changing in specifics and quantity, in the usual course of trade, exactly as they were.

The language with reference to the two classes of policies

is radically different. In one class, in case of total loss, the language is "the measure of damages shall be the amount for which the property is insured," and in case of partial loss, the language is, "the measure of damages shall be the amount equal to the damages done to the property, not to exceed the amount written in the policy." In the other class of policies the language is, "Only the actual value at the time of the loss may be recovered not to exceed the amount expressed in the policy." The purpose of this language was not to fix the measure of damages at all. It was simply to make it clear that the measure of damages which had been prescribed as to policies upon property of a fixed character should not apply to policies upon property of a changeable character.

There is another view to be suggested which makes it clear that the purpose of the legislature was entirely to exempt policies upon property of a shifting character from the operation of the statute, and not to declare that the insurer should be liable for the value of the property at the time of the loss, not to exceed the amount expressed in the policy. The clause under consideration declares that as to such polices the insured can only recover the actual value of the property at the time of the loss. If, therefore, there were two or more policies upon the property, we will say for ten thousand dollars each, and if the loss should not exceed ten thousand dollars, it is clear that the insured could not recover ten thousand dollars from each of the insurers, for the law expressly says that he cannot recover an amount exceeding the value of the property. Whereas, as to policies upon property of a fixed character, by the very terms of the statute, the insured may recover the full amount of each policy, although in the aggregate the value of the property may be many times exceeded.

The clause of the statute as to policies such as the one in controversy cannot be construed as intended to fix the measure of damages incontestably at the value of the property at the time of the loss, not to exceed the amount expressed in the

policy, without construing it as though it were written substantially as follows: "The measure of damages shall be the value of the property at the time of the loss not to exceed the amount expressed in the policy." Yet if it were so written, a result would be reached which clearly was not within the contemplation of the legislature. If the law had been so written, and there were two or more insurers, each insurer would be liable for the amount expressed in his policy if it did not exceed the value of the property, although the amounts named in the several policies might greatly exceed the value of the property. So if the amount named in the several policies was less than the value of the property, each insurer could be compelled to pay the whole amount named in his policy, although the aggregate of the several sums might greatly exceed the value of the property. If the law were so written, such policies would be placed necessarily upon the same footing precisely as policies issued upon property of a fixed character; yet nothing is clearer than that the legislature did not intend that policies upon property of a changeable nature should stand upon the same footing as those issued upon property of a definite and fixed character. In the one class of policies the intention was to make each insurer liable for the amount named in his policy, without regard to the liability of the other insurers. In the other case it clearly was the intention that no matter how many policies there might be, or what the amounts in them might aggregate, the insured should not recover more than the actual value of the property.

In 13 Am. & Eng. Enc. Law (2d ed.), 369, it is said: "It is often provided that the insured shall keep up other insurance to a certain amount or to a certain percentage of the value of the property which shall contribute proportionately with the policy in question, and that if such insurance is not maintained, the insurer shall contribute to the same extent. Such provisions are meant to distribute the risk, and are upheld.

Such provision would be allowable under our statute for the reason that it would not of its own weight and force compel the insured, in case of loss, to accept less than the amount named in the policy.

No stipulation can be said to diminish the liability of the insurer which leaves the insured in such position that by complying with the stipulation he will be entitled to the full amount named in the policy. *Wiggins* v. *Suffolk Ins. Co.,* 18 Pick., 145.

We insist that whether the policy is within or without the statute the obligation to maintain full insurance is one which the company had the right to impose. If it could impose that obligation, it could impose the minor one, by which the insurer bound himself to make good any damage or loss which might result from his failure to maintain full insurance.

*Smith, Hirsh & Landau,* for appellee.

There are several canons of construction which may be employed in determining the purpose and effect of the "valued policy law." "Statutes are to be interpreted, so as to give effects to the words therein, if such interpretation be reasonable, and neither repugnant to the provisions nor inconsistent with the objects of the statute. Where the law is plain and unambiguous, the legislature must be held to mean what is plainly expressed, there being no room for construction. *Koch* v. *Bridges,* 45 Miss., 247.

"A remedial statute must be construed largely and beneficially so as to suppress the mischief, and advance the remedy." Sutherland on Statutory Construction, sec. 409.

It will be perceived that it was the intent of the legislature, among other purposes, to reduce the cost of fire insurance, to prevent the assured from paying for more than he can recover under the policy.

If the coinsurance clause is held effective, then the cost of insurance has been increased, instead of decreased. The in-

surance companies in this state are seeking to perpetuate the very evils the law-makers sought to suppress. It was a matter of common notoriety that the insurance companies unhesitatingly accepted the valuation of the owner of the property, when premiums were to be paid, for insurance thereon, but they never showed any reluctance or hesitancy, as a rule, when a loss occurred to question or deny that valuation; therefore, notwithstanding that the common law prohibits wager policies, the legislature, in the interest of the people, was forced to create a fixed basis of settlement for loss under fire insurance policies, and required the insurance companies to recognize the valuation upon which their premium was calculated. Therefore it was enacted, "In suits brought upon insurance policies against loss by fire, hereafter issued or renewed, the insurer shall not be permitted to deny that the property insured was worth at the time of the issuing of the policy the full value upon which the insurance was calculated."

But a dispute over the valuation of the property was not the only evil with which the assured had to contend in his settlements with the insurance companies.

These insurance companies in their adroit efforts to shirk or reduce liability invented a "three-quarter clause" which is in effect a "coinsurance clause." The result was that after haggling with the assured, and reducing the valuation of the property to figures satisfactory to them, they then further diminished their loss by offering the assured, under the terms of the policy, three-quarters of said loss, or whatever proportion they had stipulated in the policy, prepared by themselves, to be the measure of their responsibility.

The legislature recognizing the injustice resulting from the insertion of such provisions in the contract of "so-called indemnity," also in unequivocal language prohibited the insurance companies from annexing to, or incorporating in their policies, this objectionable feature; and, therefore, it is also provided, "and in case the policy contains a three-quarter valuation

clause," the insurer shall not deny that the amount of the policy was but three-quarters the valuation on the date of its issuance, and a similar rule shall apply, it matters not what proportion the amount of the insurance bears to the valuation according to the terms of the policy."

It is therefore patent that the legislature had two objects to accomplish. One to create a fixed and indisputable valuation of the property insured at the time the policy was issued; and the other to prevent the insurance companies from questioning that valuation in another mode, or limit or restrict that valuation by a coinsurance clause.

The language of this court in *Assurance Company* v. *Phelps*, 77 Miss., 658, is so clear and unmistakable in its condemnation of this three-quarter clause, that it is difficult to understand how an insurance company can now contend that the provision can be effective.

The insurance companies seek to limit this construction of the law to real property or personal property, "not constantly changing in specifics and quantity in the usual course of trade." But there is nothing in the opinion of the court, or in the words of the statute, we respectfully submit, which justifies such contention.

It is common practice to avoid the effect of adverse opinions by alleging exceptions, or by creating distinctions, but the concluding words of sec. 1 of the statute fixes the measure of damages unequivocally, when personal property, which is constantly changing in specific and quantity in the usual course of trade is destroyed or damaged.

The assured·is by the express terms of the statute authorized to recover the actual value of the property at the time of the loss, not to exceed the amount expressed in the policy. He can get the amount expressed in the policy, if he shows that he has been injured to that extent, and there is nothing in the act which authorizes the insurance companies to give him less than the value of the property, by inserting a three-fourths or

two-thirds valuation clause, or what is equivalent thereto a coinsurance clause.

The argument of the insurance company, we submit, ignores entirely the prohibition in the statutes against the three-quarter valuation clause. It is founded upon the unwarranted assumption, we also submit, that the statute deals only with valued policies, and as valued polices were in frequent use prior to the enactment of these laws, the act of the legislature was simply to convert an open policy into a valued one, but by this process of reasoning the most material features of the statute, and one of the evils it was attempting to remedy are completely eliminated.

WHITFIELD, C. J., delivered the opinion of the court.

The act under construction is as follows:

"An act to amend section 1 of chapter 63 of the laws of 1894, known as the 'Valued Policy Law,' and to reduce the cost of fire insurance, and to prevent insurance trusts and combines, and to fix the amount of taxes to be paid by fire insurance companies.

"Section 1. Be it enacted by the legislature of the state of Mississippi, that section 1 of chapter 63 of the laws of 1894, be so amended as to read as follows: In suits brought upon policies of insurance against loss by fire, hereafter issued or renewed, the insurer shall not be permitted to deny that the property insured was worth, at the time of issuing the policy, the full value upon which the insurance was calculated. And in case the policy contains a three-quarter valuation clause, the insurer shall not deny that the amount of the policy was but three-fourths the valuation at the date of its issuance, and a similar rule shall apply, it matters not what proportion the amount of insurance bears to valuation, according to the terms of the policy. In case of total loss of the property insured, the measure of damages shall be the amount for which the property was insured. In case of partial loss, or damage by

fire, the measure of damages shall be an amount equal to the damage done the property, not to exceed the amount written in the policy, and in case of losses on stocks of goods and merchandise, and other species of personal property, where the same, after the issuance of the policy, is constantly changed in specifics and quantity, in the usual course of trade, only the actual value of the property at the time of the loss may be recovered, not to exceed the amount expressed in the policy." Laws 1896, ch. 56.

The scheme of this statute, it seems to us, after the most careful consideration, is this: To provide that in case of total loss of property, real or personal, except personal property constantly changing in specifics and quantity, the company shall pay the amount named in the policy, the amount on which, as a basis, the premium has been calculated and received, and that in case of partial loss of real or personal property, except personal property constantly changing in specifics and quantity, the company shall pay the amount of actual damage, not to exceed the amount of the policy; again making the company possibly liable, according to the extent of the damage, on the basis of the amount on which it has received premiums. It could not be known in advance how great or small the damage would be in case of a partial loss, and hence no sum could be named as the measure of a partial loss; and consequently, since there was no sum the parties could agree on as the measure of the partial loss, there could be no contract to pay any specific sum, but the amount to be paid must be measured by the actual damage—not to exceed, in the case of any company, the amount named in the policy. The insured might recover up to the amount on the basis of which the premiums had been calculated, but could never recover from different companies two or three times the value of the property destroyed, as in case of total loss, since there could be, in the nature of things, no fixation of the amount of partial loss, as there easily could be of the amount of a total loss. And lastly, the statute provided

that, in case of personal property constantly changing in specifics and quantity, the company should pay the actual value of the property destroyed, not to exceed the amount of the policy. The same thought, precisely, is manifest here as in the two previous cases. The insured must be made whole. The actual value of the property destroyed may be recovered, provided that amount does not exceed the amount named in the policy— the amount, again, on the basis of which the premium has been calculated. The two things clearly deducible from the statute are these: First. The insured must, at all events, in each of the three cases named, recover the amount of his actual loss; that loss being fixed in the first class, but not susceptible of fixation in the two second classes of property. Second. That the company must always pay on the basis of the amount on which it has received premiums, only the actual damage or loss, of course, in the two last cases, but, nevertheless, that whole loss up to the limit named; the amount of the policy; the amount on which the premium has been calculated. In the first class— real or personal property—as to which the value could be agreed, it is provided that that value shall be the measure against each company, no matter how many, and the insured might recover many times the actual value. Why? Because each company can agree for itself what the value is, and if it does so, and receives premiums on that basis, during the life of the contract, it does nothing but comply with the contract it makes, when it pays the whole value, for it had received premiums on the whole value. It could always know whether there was other insurance, and it might decline the insurance if it did not wish to run the moral risk in such a case. The very life of the statute is that the company shall not receive premiums on one basis, and pay losses on another. They can, in the first class of property, know the value, and insure just such part of the value as they please; but, having insured a certain part, they must pay on the basis of the value of the whole or that part as named in the contract, since they have received

premiums on such agreed value. In each of the last two classes of property the amount of the damage cannot be known in advance, so as to be contracted about; and, since no contract has been made to pay a fixed sum, the company can only be bound to pay such loss as proof may show. But while it cannot know in advance what the loss will be, it can agree to be bound up to a certain limit; and, naming such limit, and receiving premiums on such sum as the basis, it is required to pay the actual loss, not to exceed that limit. If the loss be less than such named limit—the amount of the policy, the basis on which the premiums are received—the company escapes with paying less than its possible liability. It has possibly been a very profitable contract in such case. If it has to pay the full amount of the policy, it is simply paying the amount on the basis of which it has all along received premiums. Twice does the statute carefully repeat that in the last two cases the measure of recovery should be the actual loss, not to exceed the amount named in the policy. Why this careful repetition, if it was not meant that the amount of the policy might be always recovered where the proof showed actual loss to that amount? Is it not clear that the legislature meant to impose a liability measured by the basis on which premiums were received? Twice it is said (once in case of personal property constantly changing in specifics and quantity) that the actual damage (the actual value of the property destroyed) should be recovered. Why this repetition if it did not mean that the insured should be made whole, up to the amount named in the policy? It is said the legislature meant to leave "personal property constantly changing in specifics and quantity" as it had been. How can this be meant, when plainly it does deal with that sort of property, does name the measure of recovery, "the actual value of the property destroyed, not to exceed the amount named in the policy?" This express and specific dealing with the subject matter excludes utterly the contention that it was to be left as before. The one thought in the legislative mind was to make

the insured whole, up to the limit of the amount named in the policy, in the two last classes; and it was thought only just that, receiving premiums on the basis of the amount named in the policy, they should pay, also, on that basis—pay the loss up to that limit. It may be said that if the view of the appellant is correct, the policy is avoided wholly by failure to comply with the stipulation for full insurance. With the wisdom of the law we have nothing to do. All considerations of that character should be addressed to the legislative department. It is plain there were great evils to be remedied—evils brought on by the unjust efforts on the part of the insurance companies to contract for less than fair liability. If, in attempting to cure confessed evils brought on by the insurance companies themselves, the legislature has gone too far, it is a matter for the legislature, and not for the courts. It must be clear that to permit coinsurance clauses, or three-quarter valuation clauses, or any other clauses which cross the plain purpose of this enactment, to stand, is to blot it out. In this very case the insured would get less than his actual loss, in that this insurance company would only pay two-fifteenths of the value of the property, about one-half the amount on which it has received premiums. Our duty is discharged when we enforce the law as it is written. Amendments or repeals are for the legislative department.

<div align="right">

*Affirmed.*