BIG CREEK DRUG CO. *v.* STUYVESANT INSURANCE COMPANY.

[75 South. 768, Division B.]

INSURANCE. *Forfeiture of fire policy.   Estoppel.   Knowledge of agent.*
   An insurer is bound by its agent's knowledge, and is estopped from claiming a forfeiture of a policy where its agent who solicited a renewal of a fire insurance policy, inspected the risk, receipted for the premium, and delivered the policy, had knowledge that the insured did not keep an iron safe as stipulated for in the policy, similar conditions having existed in the case of the previous policy and in such case it was immaterial whether the agent was a soliciting agent or a general agent of his company, since he was the only agent with whom the insured dealt.

APPEAL from the circuit court of Calhoun county. HON. J. L. BATES, Judge.

Suit by Big Creek Drug Company against the Stuyvesant Insurance Company. From a judgment for defendant, plaintiff appeals.

. The facts are fully stated in the opinion of the court.

*Dunn & Patterson* and *Vardaman & Vardaman,* for appellant.

*McLaurin & Armistead,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellants, W. H. Taylor and John Denley, are partners in trade, doing business under the firm name of Big Creek Drug Company. They instituted this suit against the appellee, Stuyvesant Insurance Company, on a policy of fire insurance covering a stock of goods in their storehouse in the village of Big Creek, Calhoun county. The defendant in its notice under the plea of general issue alleged a forfeiture based on the iron-safe clause. The plaintiffs replied to this special notice by alleging that the provisions of the iron-safe clause were waived by the defendant company at the time the risk was solicited and the policy delivered. On the trial of the case, it appeared that one E. F. Dezonia, Jr., inspected the risk and took the application for the insurance, and did this as an agent of the Home Mutual Insurance Company. The written application was forwarded to J. F. Chambers, agent, at Corinth, Miss. It appears that Mr. Chambers was the general state agent of the Home Mutual, and that his company, on receiving the application, preferred that other companies share the risk, and accordingly had the Stuyvesant Insurance Company and the German Fire Insurance Company each to issue a policy to the Big Creek Drug Company for and in the sum of one thousand dollars, the Home Mutual at the same time issuing a policy for one thou-

sand dollars. The policy issued by the Home Mutual Fire Insurance Company was countersigned by Moore & Chambers; while each of the other two policies, in the Stuyvesant Company and the German Fire Company, respectively, was countersigned by J. F. Chambers, agent at Corinth, Miss. The testimony of Mr. Taylor, one of the partners, shows that his company had taken out insurance in the Home Mutual a year before the policy sued on was issued. When the first policy expired, Dezonia solicited a renewal. At the time the renewal policy was solicited Mr. Taylor, according to his testimony, told the agent that he did not have an iron safe and did not expect to keep one; that he kept his books in what is known as a "McCaskey Register." Witness further says that Mr. Dezonia looked over the stock and examined the system of bookkeeping; that the first time he took insurance the agent asked him if he had an iron safe, and witness advised him that he did not; that the agent assured him that his failure to keep an iron safe would not stand in the way of a policy being written, the agent saying "that didn't make any difference;" that "it wasn't necessary." Mr. Taylor further says that Dezonia is the only agent who came to Big Creek or there solicited insurance for the Home Mutual Insurance Company; that Dezonia took applications, collected premiums, accepted promissory notes in settlement of premiums, inspected all risks, delivered policies, and, after loss, attended to the furnishing of proof of loss and having an adjuster to come and figure on the amount or extent of the loss. It appears that the adjuster, before he consented to figure on the amount of the loss, required Mr. Taylor to sign a non-waiver agreement. During the course of the examination of Mr. Taylor as a witness, the trial judge excluded his evidence in reference to a waiver, upon the ground that Taylor was bound to have known that Dezonia was

a mere soliciting agent because the application for the insurance was forwarded to the general office of the company and policies there countersigned and issued. After this ruling of the trial judge, counsel for the plaintiffs offered to prove that Dezonia wrote other merchants in Big Creek; that he represented himself to be a general agent; that sometimes he received applications and sometimes delivered policies without taking any written applications; that he collected premiums from other merchants, and delivered policies; that he at one time appointed a subagent for his company in that territory, and that in all these instances policies were not countersigned by Dezonia, but were issued at Corinth. Plaintiffs offered to introduced Mr. Cruthirds, Mr. Terry, Mr. Williamson, and Mr. Provine. The defendant objected to this line of testimony, and the court sustained the objection. It appears that in the written application which appellants signed, the written warranties at the bottom of the page, providing that representations made by the agent should not bind the company, were erased by Mr. Dezonia; and there is some evidence, also, to the effect that the written application was not signed at the place provided for the signature, but that on the back of the application was a diagram of the premises, which appellants did sign. Mr. Taylor also testified that when he went to sign the written application, the agent assured him it was not necessary to read over all the provisions; that everything was stated in the application as agreed upon. The testimony further shows that all correspondence which appellants had in reference to the insurance was conducted with Mr. Dezonia. The court excluded the plaintiff's testimony and directed a verdict for the defendant, and from the judgment entered in pursuance of this instruction appellants appeal.

It makes no difference whether Dezonia was a soliciting agent or a general agent of his company. The testimony undisputably shows that he was the only agent who solicited the insuranc, inspected the risk, accepted the application, receipted for the premium, and delivered the policy. In this case he accepted a premium note, which was afterwards deposited for collection in the Bank of Grenada and paid by appellants. This agent, in accepting the business, was fully advised that appellants did not have an iron safe and did not expect to keep one. The proof shows that the company had accepted a previous policy under similar conditions, and took this renewal with full knowledge that there was no fireproof safe, and with full knowledge of the system of bookkeeping used by the insured. The agent knew that the inventories and books would be kept in this store building and not carried to some other place of safety. In this case the knowledge of Dezonia was the knowledge of the company; and a policy delivered with full knowledge of a state of facts. which under its written stipulations, would render the insurance void should be binding upon the company. This is not a case where a solicitor or local agent undertakes to waive a condition of the policy after the contract is executed. If the company is here permitted successfully to plead a forfeiture, then the policy was void *ab initio;* appellants. in fact, never had any insurance. To permit this would allow the insurance company to assume inconsistent positions to the injury of the insured. If the facts do not show a waiver, certainly they present a case of estoppel. It is said by Mr. Cooley, in his Briefs on the Law of Insurance, vol. 3, p. 2524, that:

"The general rule that the knowledge of an insurance agent is imputable to the company applies also, in most instances, to soliciting agents with reference to matters made known to him prior to the execution of the policy. The rule is, no doubt, based on the theory expressed in *West End Hotel & Land Co. v. American Fire Ins. Co.*

(C. C.), 74·Fed. 114, that beore the execution of a policy
the powers and authority of a soliciting agent are coex-
tensive with the business intrusted to his care, so that his
positive knowledge of material facts is chargeable to his
principal" (citing many authorities in support of the text).

We believe there is a distinction between this case and
that of *Liverpool & L. & G. Ins. Co. v. Van Os,* 63 Miss.
431, 56 Am. Rep. 810. It is different also from the
*Sorsby Case,* 60 Miss. 302. The notice to the agent in the
latter case was in reference to something to be done in the
future and which might never in fact be done. Certain it
is that the instant case cannot be differentiated from the
cases of *Mitchell v. Insurance* Co., 72 Miss. 53, 18 So.
86, 48 Am. St. Rep. 535, and *Insurance Co. v. Randle,* 81
Miss. 720, 33 So. 500. Our court has expressly held
in these two cases that to permit the defense here pleaded
would be to "legalize perfidy" and to permit the company
"to attempt a fraud. In the *Randle Case,* JUDGE CALHOON
says:

"The agent of the insurance company who solicited the
risk did not rely on Mr. Randle's statement for anything.
He went in person and examined the building . . . and
knew that Randall kept no iron safe, and did not intend
to get one until the following fall; and the company, there-
fore, is bound as upon both waiver and estoppel."

The policy in the *Randle Case* having been written in
the state of Texas, many Texas cases are cited by Judge
CALHOON to show that the decisions of the Texas supreme
court and the Mississippi supreme court "are in entire
harmony on the questions presented." There is no ques-
tion but that Dezonia was fully authorized to inspect the
risk, and he is the only agent who could have knowledge
of the exact location of the premises, the amount and gen-
eral appearance of the stock, and the manner in which the
business was conducted. The safer and better view, then,
would charge the company with notice that there was no
fireproof safe, and that the insured did not expect to keep
one.

In view of what we have just said it is unnecessary to comment upon the alleged error of the trial court in refusing to permit the plaintiffs to show by other witnesses the extent of other insurance business written by Mr. Dezonia in the village of Big Creek, and to deduce therefrom the general course of dealing between him and his principal.

Our conclusions are in entire accord with and find support in *Rivara v. Insurance Co.*, 62 Miss. 720; *Insurance Co. v. Gibson*, 72 Miss. 58, 17 So. 13; *Insurance Co. v. Farnsworth*, 72 Miss. 555, 17 So. 445; *Insurance Co. v. Stevens*, 93 Miss. 439, 46 So. 245.

*Reversed and remanded.*