HARTFORD FIRE INS. CO. *v.* CLARK *et al.*

(En Banc. May 27, 1929. Suggestion of Error Overruled, June 28, 1929.)

[122 So. 551. No. 27785.]

*T. H. Byrd,* of Lucedale, and *R. L. McLaurin,* of Vicksburg, for appellant.

420

O. F. *Moss,* of Lucedale, for appellees.

GRIFFITH, J., delivered the opinion of the court.

On the 6th day of August, 1926, appellant executed a policy of fire insurance known as a Mississippi farm policy, by which it undertook to insure the appellees on a certain dwelling house located twenty-eight miles west of the town of Lucedale. The policy was for a period of five years, and was for the face amount of one thousand dollars, although in the clause naming the insured there was the following recital: "Does insure J. A. Allman and A. J. Clark as interest may appear."

The policy recites the usual terms found in farm fire insurance policies, and of these the following are made issues in the case:

"This insurance is based upon the statements contained in the assured's application and diagram of even number herewith in the Company's Southern Farm Department office at Atlanta, Georgia, each and every statement of which is hereby specifically made a warranty and a part hereof, and it is agreed that this entire policy shall be void if the assured has concealed or misrepresented in writing or otherwise any material fact or circumstances concerning this insurance or the subject thereof, or if the interest of the assured be not truly stated therein."

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

"In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company. . . . But this policy or any endorsements thereon, or attached thereto, of any kind, shall not be valid until countersigned by the general agent or superintendent of the Southern Farm Department of Atlanta, Georgia, who alone shall have power or authority to waive or alter any of the terms or conditions of this policy or to make or attach endorsements hereon."

"This policy is made and accepted subject to the foregoing stipulations and conditions and to the following stipulations and conditions printed on the back hereof, which are specifically referred to and made a part of this policy."

In the written application appearing of record, and which purports to have been signed by the insured, the following questions and answers appear:

(1) Are you the sole and absolute owner of the property proposed to be insured? (1) Yes.

(2) Is the title to the land on which buildings are situated in your name? (2) Yes.

In the application there was this further recital: "The foregoing is my own agreement and statement . . . and I hereby agree that insurance shall be predicated on such statement . . . if this application is approved, and that the foregoing shall be deemed and taken to be promissory warranties running during the entire life of said policy." And again: "The company shall not be bound by any act done or statement made by or to any agent or other person which is not contained in this my application."

Theretofore, on February 1, 1926, the insured had sold the land on which the said house was situated to E. B. O'Neal, and the deed duly delivered and recorded contained the following provisions: "Reserving therefrom, however, all the timber of every kind or nature, and the buildings thereon, for a period of ten years from this date, and reserving also the right to go upon said land and use said buildings, work said timber for turpentine, and all necessary rights of way for removing said turpentine and said timber from said land, but at the expiration of said ten years the title to all the timber and all buildings then standing and being on said land shall become vested in the grantee herein named, but should the grantors cut and remove said timber before the expiration of ten years from this date, the title to all the timber and said buildings on said land shall then immediately revert to the said grantee."

The said dwelling house, while being occupied by one of the insured's employees engaged in their turpentine works, was totally destroyed by fire on June 18, 1927. The insurance company denied liability, and appeals from an adverse decree in the trial court.

Insurance of an equal amount had been carried by this same company on the same property during the year next before the issuance of the present policy, and through the same agency. This agency is the insurance firm of S. H. Dicken & Son of Lucedale, of which Mr. Gregg Dicken is the active manager. When the previous policy was about to expire, Mr. Dicken suggested to appellees that they renew the insurance, and that, instead of a one-year policy, appellees should take a five-year policy, because of the lower rates. Appellees testified that they did not readily agree to this suggestion, and explained to the agents, as their reason, that they did not know whether they would be using the property so long as five years, and that they then fully disclosed to the agent the facts about their limited title and its connection with the continued use and possession of the property, but finally they decided to take the five-year policy.

Previously to the interview between the agent and the insured about the five-year policy, at which interview the agent was informed of the title and of the doubt whether insured would by the use of the property retain their interest therein so long as five years, a written application containing the answers above quoted had been prepared by the agent and mailed to appellees, but this particular application was never returned. Thereafter, when the five-year term had been agreed upon, another application, which appears to be practically a copy of the first application, was made out in his office by a clerk of the agent under his direction and was mailed. This second application was in some way brought back and delivered to the agent, who then forwarded it to the Atlanta office of the company, together with additional written data appended thereto and signed by the agent, which appendix was in the nature of a recommendation by the agent that the policy be issued, but the agent did not

advise the said Atlanta office of the aforesaid information which had been given the agent respecting the character of ownership by appellees of the property in question.

In addition to the application of appellees and the recommendation of the agent forwarded as aforesaid, there was forwarded therewith also a diagram of the house, showing its size and the dimensions of the various rooms. This diagram was made by the agent as a result of personal visits to the property and of a careful inspection of it by him, as a result of which visits and inspection certain repairs were directed to be made by the agent, which directions were complied with by appellees. In due time the policy was issued by the Atlanta office and forwarded to the agent. There is a provision of the policy immediately following the signature of the superintendent of the Southern Farm Department that ''This policy is valid only when signed by S. H. Dicken & Son, Agent, at Lucedale, Mississippi.'' Upon its receipt by the agent it was signed by said S. H. Dicken & Son, and was thereupon by the agent delivered to the insured, and the said agent collected the premium.

The agent denied in his testimony, to the best of his recollection, that he was informed by the insured, as testified by them, in respect to the matter of ownership; he said he simply took it for granted that it was theirs when he made out the application; that these insured had always depended on him to take care of the insurance, and for this reason he himself made out the application; but he declined to deny that, previously to the making out of the second application, there was a conversation with him by the insured to the effect that they might be through with the property before the expiration of five years. The insured both denied that they had signed the application, and the agent was unable to definitely contradict this or to testify how or when he got the application back, but could only say that he received it in some manner either by hand or by mail.

The result of the decree is that the chancellor found as a fact that the agent knew of the condition of the title or character of ownership of the insured when he made out and forwarded the second application to the Atlanta office, and this finding is not only supported by the direct evidence, but is the more reasonable in consideration of the interview had with the agent respecting the advisability of a five-year policy. It may be that the chancellor found also, since the decree is a general one, that neither Clark nor Allman signed the application; but for the purposes of this opinion we will assume that one or both of them signed it. In doing so, however, we cannot go further, in view of the effect of the decree, than to assume, and moreover we think fairness under the evidence allows nothing further than to assume, since the application is a lengthy document covering fourteen pages of the typewritten record, that they signed it without reading it, and for that reason had forgotten about signing it; and this latter assumption is further strengthened by the fact, as Mr. Dicken testified, that they always depended on him to take care of the insurance. This feature is mentioned, not that a party is relieved of his signature in a legal sense when he signs a paper without reading it, but in connection only with the consideration that, if they signed the application without reading it, prepared as it was by the agent, upon whom the insured depended, the imputation of a conscious fraudulent intent on the part of the insured to deceive would be rebutted and avoided.

Appellant does not seriously contend that the testimony is not sufficient to support the finding of fact that the agent Dicken had knowledge of the condition of the title or quality of ownership of the insured when he accepted and forwarded the application and when he countersigned and delivered the policy and collected the premium. Nor does appellant directly attempt to controvert the proposition of law that ''an insurance company, like

other principals, is bound by knowledge of, or notice to, its agents within the general scope of his authority, notwithstanding a contrary provision in the application or policy.'' 32 C. J. 1069. This proposition of law has become too firmly fixed in our jurisprudence to be now questioned. For instance, on this point it was said in *Rivara* v. *Ins. Co.,* 62 Miss. at page 729: ''In such case the insurance company cannot claim that it has been wronged or deceived, and to permit it to issue a policy and take the benefits of the contract, knowing at the time that it is not bound thereby, and afterwards to avoid liability thereon, upon the ground that something existed or did not exist of which the company or its agent was fully aware at the time the contract was made, would be repugnant to that sense of justice and morality which is and should be inculcated by law.'' See, also, *Ins. Co.* v. *Randle,* 81 Miss. 720, 33 So. 500; *Ins. Co.* v. *Gibson,* 72 Miss. 58, 17 So. 13.

But it is the contention of appellant that the agent Dicken was a mere soliciting agent, that he had no authority to issue a farm policy such as this, and that the facts were such as to put the insured on notice of this limited authority. Putting aside the fact that this policy under its express terms had no validity until countersigned by S. H. Dicken & Son, and that their signature was not the intermediate but the final act of execution which put the policy into existence, and conceding for the purposes of this case that Dicken was a soliciting agent only, we think the weight of modern judicial opinion throughout the country supports the proposition that ''knowledge acquired by a soliciting agent in the course of his employment in soliciting insurance, preparing and transmitting applications, delivering policies, etc., is ordinarily imputed to the company,'' 32 C. J. 1325; 26 C. J. 296-298, and, were the question a new one in this case and in this state, we would so hold, not only upon principles of the common law, but upon what we

deem to be the clear provisions of our statute, section 2615, Code 1906 (section 5873, Hemingway's 1927 Code). But the question is not new in this state; it was expressly decided in *Big Creek Drug Co.* v. *Ins. Co.,* 115 Miss. 333, 75 So. 768, in which the court said: "It makes no difference whether Dezonia was a soliciting agent or a general agent of his company. The testimony undisputably shows that he was the only agent who solicited the insurance, inspected the risk, accepted the application, receipted for the premium, and delivered the policy. . . . In this case the knowledge of Dezonia was the knowledge of the company; and a policy delivered with full knowledge of a state of facts which under its written stipulations, would render the insurance void should be binding upon the company."

We not only approve the holding in the cited case, but we approve and adopt the terse expression taken from the opinion in *Bergeron* v. *Ins. Co.,* 111 N. C. at page 47, 15 S. E. 883, wherein the whole matter is cast into one sentence as follows: "The principle has been more than once announced by this court, that where a soliciting agent is informed, before the policy is issued, of a fact, which, if fraudulently concealed by the applicant, would constitute a ground of forfeiture under one of its conditions, and afterwards receives the premium and delivers the policy, his knowledge is imputed to his principal, and, whether he actually communicates the fact to the principal office of the company or not, the condition is deemed to have been waived."

Counsel for appellant cites cases such as the *O'Dom case,* 100 Miss. 219, 56 So. 379, Ann. Cas. 1914A, 583; *Ins. Co.* v. *Bouldin,* 100 Miss. 660, 56 So. 609; *Truly* v. *Ins. Co.,* 108 Miss. 453, 66 So. 970; *Casualty Co.* v. *Hall,* 118 Miss. 871, 80 So. 335, and others of like kind, but these cases, where they come within the range of applicability at all, deal with the authority of soliciting agents

or of other agents of limited authority to waive or alter the stipulated provisions of the policy after the policy has been delivered and the making of the contract has been consummated and that part of the transaction ended. Appellant, along with this class of cases, relies strongly on *Merchants' Ins. Co.* v. *Marsh,* 34 Okl. 453, 125 P. 1100, 42 L. R. A. (N. S.) 996, but, as distinguishing that case, we cite the later case from the same court, *State Mut. Ins. Co.* v. *Green,* 62 Okl. 214, 166 P. 105, L. R. A. 1917F, 663, a case strikingly similar to the case at bar upon the facts, which refers in its opinion to a wealth of authorities and sustains our holding in every particular. Among the facts in that case was the fact that the sole legal title to the insured property was in the name of the husband, but was insured in the name of the wife, and the wife signed and delivered a written application, prepared by the agent, in which it was stated by the wife that she had title to the property by a warranty deed. The agent in the case was simply a soliciting agent, but he was at the time made acquainted with the true *status* of the title; and throughout the case, as already said, the facts are remarkably similar to the case here in hand.

It is another contention of appellant that the only insurable interest which appellees had in the property was that of "use and occupancy," and that, since one of the terms of the policy is that appellees were insured "as interest may appear," no recovery could be had beyond the actual value to appellees of that use and occupancy. There is no proof of value in the record; none was offered by either side. We might therefore as well suppose or conjecture that the value of said use and occupancy was equal to, or more than, the face value, to-wit, one thousand dollars, as that it was less, if we could indulge in suppositions or conjectures, which we, of course, cannot. But, except as hereinafter stated, we are relieved of any necessity to determine either the character or

particular quality of the title or interest of appellees in the property and of any consideration of the question of the value of that interest, for the reason that our valued policy law, section 2592, Code of 1906, Laws 1912, ch. 224, section 5850, Hemingway's 1927 Code, provides: "When real property, or buildings, . . . insured against loss by fire, and situated within this state, are totally destroyed by fire, the company shall not be permitted to deny that the property insured was worth at the time of the issuing of the policy the full value upon which the insurance is calculated, and the measure of damage shall be the amount for which the property was insured."

In *Assurance Co.* v. *Phelps,* 77 Miss. at page 658, 27 So. 757, it was said: "The amount named in the policy, and on which amount the insured pays premiums, is practically liquidated damages in case of a total loss. . . . The statute supervenes all policies issued under it, and writes out of them all stipulations inconsistent with itself." *Ins. Co.* v. *Shlenker,* 80 Miss. 667, 32 So. 155; *Ins. Co.* v. *Barron,* 91 Miss. 722, 45 So. 875.

The least that could be said of the title or ownership of appellees in this case is that they were lessees—certainly their title or ownership was equivalent to, if not more than, that of lessees—and it is settled in this state that a lessee has an insurable interest, and under our valued policy law is not confined, in case of a total loss of the building, to a recovery only upon the value of his lease, but may recover the full amount named in his policy. *Fire Ins. Co.* v. *Planters' Bank,* 138 Miss. 275, 103 So. 84, and cases therein cited. When a face value of one thousand dollars or any other fixed amount is inserted in a policy and premiums are collected on that basis, if the court should permit that another clause could be validly inserted limiting the recovery of the immediately insured to another measure of value or of damage "as interest may appear," then there would be a judicial repeal of our valued policy law.

It is complained also that the application and policy described the property as being in Stone instead of George county; that appellant had not insured this property in George county, but insured it in Stone; and that the court was in error in allowing a reformation of the policy. As has already been stated, the agent, according to his own testimony, visited this property several times before the policy was issued; he admits that he knew it was in George county, and says that it was simply an error in making out the application in his office. This point also is covered, among the others, in the case *State Ins. Co.* v. *Green, supra.* See, also, *Ins. Co.* v. *Anderson,* 120 Miss. 278, 82 So. 146, and there is no error in the decree in this respect, nor in any other that we can see.

*Affirmed.*

ETHRIDGE, J., delivered a dissenting opinion.

In addition to the provisions of the policy and the application set out in the majority opinion, I desire to call attention to the provision of the policy limiting to the general agent or superintendent of the Southern Farm Department, of Atlanta, Ga., alone, the power to waive or alter the terms and conditions of the policy. This clause reads as follows: "But this policy or any endorsements thereon, or attached thereto, of any kind, shall not be valid until countersigned by the general agent or superintendent of the Southern Farm Department at Atlanta, Georgia, who alone shall have power or authority to waive or alter any of the terms or conditions of this policy, or to make or attach endorsements hereon."

The policy also contains this provision: "This entire policy shall be void if the insurer has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject

thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

As shown by the majority opinion, the application for the insurance propounded directly to the applicants the question as to whether they were sole and absolute owners of the property to be insured, to which they answered "Yes." When asked, "Is the title to land on which buildings are situated in your name?" they answered, "Yes."

The application for insurance, immediately before the signatures of the applicants, J. A. Allman and A. J. Clark, contains this provision: "N. B.—This Application in all cases to be signed only by the applicant or some person duly authorized by him or her. In no case by the agent."

The application also contains the following statement: "The foregoing is my own agreement and statement, and is a correct description of the property on which indemnity is asked, and I hereby agree that insurance shall be predicated on such statement, agreement and description, if this application is approved, and that the foregoing shall be deemed and taken to be promissory warranties running during entire life of said policy."

I think these provisions in the application for insurance, and the insurance policy, show conclusively that the insurance company reserved to its office in Atlanta the sole power of accepting the risks and issuing policies on farm property; and that these agents, to-wit, the Southern Farm Department, wrote the policy solely upon the statements contained in the application, and any knowledge possessed by the local agent cannot be imputed to the company.

It is difficult to see how the business of insurance can be successfully carried on, unless the insurance companies can establish agencies satisfactory to themselves, for the

purpose of passing upon such risks, and of providing by its contracts that the insurance is written upon the representations made to the company in the application for insurance alone.

In *New York Life Ins. Co.* v. *O'Dom,* 100 Miss. 219, 56 So. 379, Ann. Cas. 1914A, 583, it was held that a corporation can provide or stipulate in its policy that its provisions can be varied only by notice or representation brought to the actual knowledge of one of its principal officers.

It was also held that a stipulation in the policy of insurance that an agent has no power to alter the terms of the contract or waive its conditions is notice to the insured of the agent's limited authority in these respects, and, under such stipulation, the insured cannot rely upon any action of the agent as constituting a modification or waiver.

In other words, this case holds that the insurance company may do what was done in the policy now before us; that is to say, the company can select agents for a particular purpose and limit their power to that purpose, and can confide to itself or to such of its officers or agents as it may select, the power to pass upon the risks of insurance, and to make the application and representations therein contained the basis of writing the insurance and making it a valid contract.

This court also held, in *Liverpool & London & Globe Ins. Co.* v. *Van Os,* 63 Miss. 431, 56 Am. Dec. 810, that the authority of the agent in that case seemed to be limited to receiving and forwarding applications for insurance, delivering the policies transmitted to him by the agent at Vicksburg, and receiving and remitting the premiums paid; and that notice to such an agent is not notice to the company, citing *Hanover Fire Ins. Co.* v. *Sorsby,* 60 Miss. 302.

In the case of *Big Creek Drug Co.* v. *Stuyvesant,* 115 Miss. 333, 75 So. 768, the court held that knowledge to the

agent of the conditions there in litigation was knowledge to the company, but based its holding upon the fact that he was the only agent who inspected the risk and with whom the insured dealt.

The court there distinguished between that case and the *Liverpool & L. & G. Ins. Co.* v. *Van Os,* 63 Miss. 431, 56 Am. Rep. 810, and the *Sorsby case,* 60 Miss. 302, but did not overrule them. The court said: "We believe there is a distinction between this case and that of *Liverpool & L. & G. Ins. Co.* v. *Van Os,* 63 Miss. 431, 56 Am. Rep. 810. It is different also from the *Sorsby case,* 60 Miss. 302. The notice to the agent in the latter case was in reference to something to be done in the future and which might never in fact be done. Certain it is that the instant case cannot be differentiated from the cases 'of *Mitchell* v. *Insurance Co.,* 72 Miss. 53, 18 So. 86, 48 Am. St. Rep. 535, and *Ins. Co.* v. *Randle,* 81 Miss. 720, 33 So. 500."

In the present case the application was not taken by the local agent and the policy issued and delivered by him, but the application was sent to the Atlanta office for acceptance or rejection. It was represented in that application that the application was that of Clark and Allman, and that the agent had no authority to sign it— and the company issued the policy upon the information contained in that application. It had a right to rely upon the statements of the applicants for insurance that the representations therein were theirs, and that they were true, and should constitute the basis of the contract.

There is nothing in the law of this state prohibiting the making of such a contract, and it is familiar doctrine that, where parties consent that a written contract is the basis of its agreement, and that no representations have been made to the contrary, and that they cannot be varied by parol evidence, the parties have a right to stand upon the contract so made, and that it embodies the entire

agreement of the parties. *J. B. Colt Co.* v. *Odom,* 136 Miss. 651, 101 So. 853.

In *Continental Casualty Co.* v. *Hall,* 118 Miss. 871, 80 So. 335, it was held that an insurance contract, like any other contract, when perfectly plain and unambiguous, should be construed as written. It was also held that a soliciting agent for an insurance company is merely a special agent, without authority to write policies or to bind the company by its terms or to alter them; his authority is entirely different from that of fire insurance agents, who write policies for their companies. There is, of course, no difference in the powers of a life insurance company and of a fire insurance company to limit the authority of their agent. The difference grows out of the general practice of the fire insurance companies of permitting their local agents to execute and deliver policies at the local office. In such cases they are the general agents of the company, and knowledge to them is knowledge to the company. But, when they expressly limit the power of their agent to soliciting and forwarding applications, and reserve to the general officers of the company or any other general agencies the right to pass upon the risks, then they have the right to limit their contract to the statements contained in the applications and in the policies. And, where the local agent has no authority to act as a general agent, knowledge to him not pertaining to his agency is not knowledge of the company.

In *Stewart* v. *Coleman & Co.,* 120 Miss. 28, 81 So. 653, it is held that authority of an agent to issue policies for a company does not necessarily authorize him to cancel them, and, as I understand the decision in that case, the statute, section 5873, Hemingway's Code 1927 (section 2615, Code 1906), makes the agent the agent of the company only for the purposes covered by his agency, and does not make him the general agent of the company.

I am therefore of the opinion that the court below was in error in permitting a recovery at all, because of the misstatements contained in the application for the insurance, and especially as to the ownership of the property. It is manifest that no insurance company, in a case like this, would write a policy for the full value of property, or in excess of the interest owned by the insured, and it is quite likely that the company would not have issued a policy at all had the true state of the title been disclosed to its general agents having the right and authority to pass upon the risk. I think the authorities of this state amply sustain my view of this phase of the case.

I do not think the insured should have been permitted to recover the full amount of the policy, even if it be the law that an insured, misrepresenting the ownership of property in a written application, made a part of the contract, can recover, because the local agent, having nothing to do with passing upon the risk, happens to know (conceding that he did, in fact, know) that the ownership was different, but should have been limited to the value of the interest which he actually owned, which in this case was far less than the amount of recovery in the policy.

It is stated in the majority opinion that there was no evidence offered as to the value of the interest of the insured in the property. The deed of sale was introduced in evidence, and it recites a consideration for the property, including the timber on one hundred sixty acres of land, of five hundred dollars. The recitals of the deed are *prima-facie* evidence of the value of the property, and, while not conclusive, should govern in the absence of other proof. The interest of the insured in the building was simply a right of occupancy for less than five years. This property was situated in the rural sections, and had but little value apart from the land; in other words, the rental value of the property was exceedingly small. However, it was the duty of the plain-

tiff to prove the real value of his interest, where he had misrepresented the nature and character of the interest, if he is to be permitted to recover at all, and thus profit by his own fraud and wrong. Of course, I do not think he should be allowed to profit by his own fraud and wrong, but, if the court is to permit him to recover the value of whatever interest he had under the clause "as his interest may appear" contained in the policy, it was incumbent on the plaintiff, where his interest was different from that disclosed in the application, to show the interest and the value thereof.

In my view, the case of *Miss. Fire Ins. Co.* v. *Planters' Bank,* 138 Miss. 275, 103 So. 84, does not authorize the recovery of the full value of the property where the insured owns less than the entire interest of the property, unless the interest of the insured is disclosed in the application or the policy. In that case, in stating the facts, the court said: "The policy was issued to K. I. Wells for one thousand five hundred dollars upon furniture, and one thousand dollars upon the residence which he occupied as a lessee. The policy of insurance recited that the dwelling house was occupied by the assured as lessee and stood upon leased premises."

The court then set forth the exact language of the policy in that case; and continued: "The controversy between the parties is only as to the payment of the one thousand dollars for the loss of the dwelling house; the appellant, insurance company, contending that it is not liable for the payment of the full amount of one thousand dollars named in the policy, notwithstanding the 'valued policy law.' "

Here the court set out the substance of the statute, and also of the insurance contract; and then said: "These questions as to whether a lessee has an insurable interest in the leased building, and whether or not he is limited in his recovery to the value of his leasehold, and

may not rely upon the valued policy statute, which provides that the insured shall recover the full amount named in the policy, are not new questions in our state. This court has several times held that the lessee has an insurable interest in a leased building and that the measure of his recovery for total loss by fire is the full amount named in the policy, *providing, of course, there be no fraud in securing the insurance.*" (Emphasis supplied.)

The court cited the various cases which supported its opinion. None of these cases have held that the insured may recover in excess of the actual value of his loss where there was fraud or misrepresentation in securing the insurance. In other words, in those cases the interest of the insured was disclosed to the company or to those representing it in writing the insurance, and the company had full opportunity to judge of the value of the property insured at the time it took the risk. That being true, the purpose of the valued policy law was to prevent the company from thereafter disputing that the property was, in fact, worth the amount agreed upon in writing the contract. It is familiar doctrine that fraud vitiates all contracts. In the case before us, there was the grossest kind of fraud practiced upon the insurance company. The insured represented that they were making the application, and the statements therein contained were their statements, and that the interest they owned in the property was full and unconditional ownership in fee, and that the title to the land upon which the building was situated, and to the building itself, was in themselves. This was not true. The fact was that they had previously sold the land and the building, reserving only a right of occupancy in the building during a limited period. It is familiar knowledge that a party will not be permitted to profit by his own wrong and fraud, and, where such wrong and fraud appears in the development of the plaintiff's case, he should be denied all relief in the courts.

It appears to me to be a monstrous thing to permit a person to make a misrepresentation in securing a policy of insurance, and, after procuring it, finding its provisions emphatically provide that it is void if the insured is not the owner in fee simple, to still recover the full amount of the policy—on the theory that an agent of the company who was merely a soliciting agent, if an agent at all for the purpose of procuring the insurance had knowledge of, and connived in, the fraud. It seems to me that this principle is fully established in *Riverside Development Co.* v. *Hartford Fire Ins. Co.*, 105 Miss. 184, 62 So. 169, Ann. Cas. 1916D, 1274, where it was held that an agent authorized to issue tornado insurance cannot bind his principal by issuing a policy on property owned by him or in which he has an interest adverse to his principal, or on property owned by a corporation of which he is a stockholder, and in such cases it makes no difference that the rate of premium is fixed and that the agent acted in good faith in issuing the policy.

It was also held that the ratification of the invalid act of an agent is binding upon the principal only when the latter has full knowledge of the circumstances which rendered the act invalid.

The agent here denied the statement of the plaintiff that he had knowledge of the true conditions of the title to the property. He knew there had been some deal with reference to it, but his knowledge did not extend to the real character of the deal. The company issued the policy upon the faith of the statements contained in the application which the insured knew to be false, but which the insurance company believed to be true.

It will not do to permit a party who signs a written contract or instrument afterwards to assert that he did not know the contents of such document, unless he has been misled by the adverse party, by some misstatement or fraudulent conduct in reference thereto.

I am therefore of the opinion that the judgment of the court should be reversed, with judgment here for the appellant.

Chief Justice SMITH dissents, and concurs in most of what Justice ETHRIDGE has said.