AGRICULTURAL INSURANCE CO. OF NEW YORK *v.* ANDERSON.

[82 South. 146, Division A. No. 20777.]

1. INSURANCE. *Reformation of policy. Mistake. Location of property insured.*

Where the agent of the insurance company, under instructions from insured to locate his cotton and insure it at the place where it was found, having independently investigated its location and insured it as being in brick compartments, when in fact the cotton was in frame sheds, where fire afterwards destroyed it. In such case the policy will be reformed as for mutual mistake and recovery had thereon by insured.

2. SAME.

    In such case the insurer is estopped to deny that the cotton insured, although described in the policy as being located in brick compartments was in fact the cotton which was intended by both parties to be insured.

  APPEAL from the chancery court of Hinds county.

HON. LAMAR F. EASTERLING, Chancellor.

Suit by Mrs. A. C. Anderson against the Agricultural Insurance Company of New York. From a decree for complainant, defendant appeals.

The facts are fully stated in the opinion of the court.

*McLaurin & Arminstead,* for appellant.

The doctrine of estoppel has no place here. We submit that the jurisdiction of a chancery court to reform a policy cannot be invoked on the equity ground of reformation when there is no ground for such reformation, and then undertake to recover on a separate and distinct ground applicable to legal actions purely. Estoppel in an insurance contract applies only to policies which have once attached, like waiver. The doctrine of waiver, and the doctrine of estoppel are closely akin, and they only apply in those cases where a policy has once attached and is sought to be avoided by a breach of some affirmative or promissory warranty in the policy, and the reply is made that the forfeiture does not operate on account of some waiver or estoppel on the part of the insurance company, or its representative. The pending case is a case where the evidence shows that the policy never did attach, because of the fact that the request of the appellee's agent, Mayfield and Buck, was to insure the cotton in the brick compartments of the Tallahatchie Compress Company and no cotton was there. Therefore, the policy as written covered nothing, and was void by reason of the fact that there was no cotton in the location on which the policy was written. See 3 Cooley's Brief on Insurance, p. 2460; *Article*

v. *Ins. Co.*, 131 Fed. 13, affirmed 198 U. S. 583; *Ins. Co.* v. *Walff*, 95 U. S. 326.

If the evidence in the case would not warrant a reformation of the policy, which counsel for appellee seems to admit, as they do not discuss our authorities as to what is necessary to obtain a reformation of the policy, but dispose of them as if with a wave of the hand by saying that they announce general rules of reformation; if the appellee is not entitled to a reformation of the policy, then no possible estoppel can arise; it is an entire misconception to insist that an estoppel can arise on a void policy. If the policy is void for any reason it never attached, and no estoppel or waiver could ever bring to life a void policy.

Counsel's efforts to weave an estoppel into his case is *non sequiter* and has no place in this case from any view. We rest the case on the absolute failure to make the necessary proof entitling the appellee to a reformation on the authorities cited in our original brief.

On the question of an estoppel arising against the insurance company to claim that this policy is void by reason of the fact that it never attached, that there was no property on which it covered in the location described, or that it was issued at the suggestion of an agent who has claimed to represent both the assured and the company, then no kind of estoppel could ever put life in such a policy.

The citation of the case of *Insurance Company* v. *Antram*, 86 Miss. 224, by appellee, is most unfortunate for appellee. On page 230 in the opinion in this case, Judge Truly, speaking for the court laid down two distinct propositions. First: "That a void policy could not be waived into existence by waiver or estoppel; second: "That where the agent remits to the company the premium due and credits the assured, and afterwards receives from the assured the premium the agent has previously paid, that it is a mere private indebted-

ness due the agent as an individual and could not by operation of law or by force of any adjudication of this court constitute a waiver on the part of the company, even conceding that at the time of such payment both the adjuster and the agent had full knowledge of all the facts of the case, and of all the circumstances surrounding the fire, and the representations by which the issuance of the policy was procured. Such a doctrine would be to place the premium on fraud, and to encourage unscrupulous persons to procure by corrupt practices the issuance of policies, and then, should loss occur before their fraud became known, to protect themselves by inducing the agent then to accept the premium.''

All of the foregoing quotations from the opinion of the court in the Antram case was omitted by counsel for appellee in their reference to this case, on page fifty-seven of appellee's brief.

If, therefore, the policy was void by reason of the double agency or, by reason of the fact that there was no property in the location that the policy covered, it. ends this case, and it is perfectly idle to. be taking up. the time of the court by short extracts from cases selected out of the Digest, where no facts are given to the court to show what was before the court in the respective cases cited from their jurisdiction.

Indeed it is useless for the court to go to the trouble of seeking authorities outside of the state of Mississippi to decide this case, as the authorities of this state settled the question involved in this record beyond all controversy. No cases cited by counsel in appellee's brief apply to this case, for the reason that a total misconception seems to have arisen in the preparation of appellee's brief, in failing to draw a distinction between a policy that never had attached, and a policy that once did attach but was subsequently breached and a forfeiture was claimed and the plain-

tiff replied that the forfeiture was waived or the company estopped to claim such forfeiture. We ask the court to carefully observe this distinction in the case, and we confidently believe that no authority can be found, as counsel cites none, whereby a void policy which never did attach can ever be waived into existence, or that the company can be estopped from insisting that the policy is void by any claim of estoppel. The burden of appellee's contention is viewed from the standpoint that the policy once attached and the company was estopped to set up a forfeiture.

No such case is presented in this record at all, and therefore we insist that the authorities cited by counsel for appellee do not touch this case in any view. This record does not present a case where the insurance agent examined the property before the policy was issued and acted on his own information, as was decided in the case of *Insurance Company* v. *Holmes,* 75 Miss. 390.

It has no resemblance whatever to the case of *Mitchell* v. *Aetna Insurance Company,* 71 So. where an inventory was presented by the assured to the agent before the policy was issued, which inventory the agent approved and issued the policy, and after the fire, undertook to claim that the inventory was not intemized.

It is not a case like the *Scottish Union & National Insurance Company* v. *Wiley,* 110 Miss. 680, where the agent knew about the condition of the property before the policy was issued, and with that knowledge issued and delivered the policy.

All these cases cited from the Mississippi supreme court by counsel, as well as the other cases from other courts, failed to recognize the distinction we are discussing between a policy that never attached and a policy that did attach, but was afterwards breached and the company held liable because its representative had done

something that prevented them from insisting on the breach.

This is not a case where any application was prepared by the insurance agent and incorrect answers given to questions and the policy afterwards issued and contested on the ground that the answers were incorrect. The supreme court of Mississippi long ago in the case of *Planters Insurance Company* v. *Myers,* 55 Miss. 479, settled the law in this state that where the answers were improperly written down by the agent, the assured was not bound. On page 507, in this case in the opinion of the court, the court said: "The underwriter was entitled to full disclosure, not merely to know the truth but the whole truth; the witholding of any facts material to the risk is tantamount to a false representation, and visited with the same penalty." (The avoidance of the policy.)

So from this case the court will see that it is not the duty of an insurance agent to go over ten or twelve thousand bales of cotton to see if the appellee's cotton was in the lot and where it is as seriously insisted in this case that Mr. Steele agreed to locate the cotton and insure it.

Counsel for appellee has reasoned himself into a strange situation. He has evidently taken the Digest and abandoned the Mississippi cases applicable to the facts in this case, and undertaken to hunt up some view on which he can hope to bind this company, and he cited authorities to show: First: That if the agent of the company acts on his own knowledge and issues a policy which is a valid policy and attached to the risk, he cannot claim to have been misled in reference to the facts he knew. Second: That if the agent issues a policy without investigation he is presumed by law to have made the investigation on his own account.

These two propositions bring forcibly to mind the saying of the great Mississippi Lawyer, Judge WILEY

P. HARRIS, who, in responding to such an argument, said: "That if you open your mouth you spill a waiver; and silence gives consent."

It is hardly necessary, we submit, for us to say anything further in reference to the return of the premium, to what was suggested in our original brief, but since counsel has referred the court to the case of *Mechanics Insurance Company* v. *Smith,* 79 Miss. 142; and the *Mississippi Home Insurance Company* v. *Dobbins,* 81 Miss. 623; we will simply say that these cases, like all the other authorities cited by counsel, have no application on earth to this case. They were cases where the policy had once attached and the company was defending on the forfeiture, and the court held in the *Dobbins case supra,* that the forfeiture was waived by the acceptance of the premium after full knowledge of the forfeiture; and in the *Smith case, supra,* the court held that the tender back of the premium after the beginning of the trial on an insurance policy, did not entitle the company to make the defense of a breach of a condition known to its agent at the time of the acceptance of the premium. Now what have these cases to do with a case where the policy was void from its inception? Void for two reasons: First: Because it was the suggestion of the agent of the assured on a location where the property was not located. It makes no difference whether the cotton was in transit or in the sheds of the compress, it was not in the brick compartment and therefore the policy did not attach. It was just as though no policy had been written. Second: If Mayfield and Buck are the agents of the assured and the agents of the insurance company, then the policy is void under the *Wildberger case,* in 72 Miss. and is just as though no policy had been written. In either event this policy is void. *Insurance Company* v. *Mount,* 90 Miss. 669; *Insurance Company* v. *McQuaide,* 11 Miss. 430.

We insist, therefore, that a careful analysis and a distinction of the cases will show to the court that the cases relied on by appellee have no application to the facts in this case; that he has ignored the Mississippi cases and their true doctrines and especially ignored the *Wildberger case*, in 72 Miss., *supra*, so fatal to his contention, and that this case presents a theory where a policy never did attach, and therefore the doctrine of waiver and estoppel cuts no figure whatever, and has no business in the bill in this case. It is a mere loading up of a bill for some kind of impossible relief, when the only true question involved was whether or not this policy should be reformed. To say that there was a mutual mistake of the parties in this case, we submit to the court, violates the evidence in the case, and especially does it fall short of the showing that the law requires to be made. We insist that there is no right to reform, the policy being void at the time of its issuance. There is no relief that the appellee could possibly be entitled to, and this case should be reversed and the bill dismissed.

*Alexander & Alexander* and *Hill & Whitney*, for appellee.

It is very important in the consideration of this topic that the court be impressed with the following suggestions: First: Mrs. Anderson is absolutely without fault nor did she make any representations whatsoever, nor did she have any knowledge about the location of the property or the risk. Third: George Buck and E. Mayfield were agents of the company, and it is immaterial that Shelby Steele was told by them that the cotton was in the brick compartments, without further qualification, if such was the case. Fourth: Even if George Buck and Mayfield are held to be agents of Mrs. Anderson, then, appellant is liable, because the Delta Insurance and Realty Agency did not rely on anything that

they told them, but used their own methods of ascertaining the correct location of the cotton, and now cannot be held to avoid the policy. Fifth: If Shelby Steele's agency elected to rely on information furnished by a third party, then the company is bound by the mistake made, when the information was incorrect. *Scottish Union & National Ins. Co.* v. *Wylie*, 70 So. 835, 110 Miss. 681; *Mitchell* v. *Ætna Ins. Company*, 71 So. 382; *Insurance Company* v. *Holmes*, 75 Miss. 390; *Liverpool, etc., Ins. Company* v. *Farnsworth Lbr. Co.*, 72 Miss. 555; *Insurance Company* v. *Randle*, 81 Miss. 720; *Southerland* v. *Insurance Company*, 52 So. 689; *Ætna Insurance Company* v. *Smith, McKinnon & Son*, 78 So. 289; 3 Cooley's Briefs, page 2630; *Dowling* v. *Merchants Ins. Co.* 31 Atl. 1087; *Phoenix Inc. Co.* v. *Allen, Jr.*, 16 N. W. 85, Syllabus; *German Ins. & Sav. Inst.* v. *Kline*, 62 N. W. 857; *Brenner* v. *Conneticut Ins. Co.*, 74 S. W. 406; *Dodge* v. *Green Shippers Ins. Co.*, 157 N. W. 959; *Simpson* v. *Farmers Ins. Co.*, 151 N. W. 610; *Union Ins. Co.* v. *Wilkinson*, 20 Law Ed. (U. S.) 617; *Southern States Fire Ins. Co.* v. *Vance*, 68 So. 647; 1916B. (L. R. A.) 1189; *Yoch* v. *Home Mutual Ins. Co.*, 34 L. R. A. 859; *Phoenix Ins. Co.* v. *Weeks*, 26 Pac. 410; *Porte* v. *Ins. Co. of North America*, 29 Pa. Super. Ct. 75; *Gandy* v. *Orient Ins. Co.* 29 S. E. 655; *Glover* v. *Nat'l Fire Ins. Co.*, 85 Fed. 125; *Dannis* v. *Humboldt Fire Ins. Co.*, 75 Atl. 607; *Leisin* v. *St. Paul Fire & Marines Ins. Co.*, 127 N. W. 837; *Central Market St. Co.* v. *Ins. Co.*, 91 Atl. 662; *Globe & Rutgers Fire Ins. Co.* v. *Ind. Reduction Co.*, 113 N. E. 426; *Exchange Mutual Fire Ins. Co.* v. *Consolidated Mutual Fire Ins. Co.*, 46 Pa. Super. Ct. 601; *Tilton* v. *Farmers Ins. Co.*, 143 N. Y. Sup. 107; *Atlantic Home Ins. Co.* v. *Smith*, 71 S. E. 902 (IM. P. T.); *Johnson Stroud* v. *Rhode Island Ins. Co.* (1916), 90 S. E. 124; *Continental Ins. Co.* v. *Kasey*, 18 Am. St. Rep. 683; *Guardian Ins. Co.* v. *Connelly*, 20 Canada Sup. Rep. 208; *Hastings Mutual Fire Ins.*

*Co.* v. *Shannon,* 2 Canada Sup. Rep. 405; 2 Can. Rep. 409; Same cases referring to "Nontariff Fire Ins. Co. case," 22 Ill. Rep. 422; *Atlantic Ins. Co.* v. *Wright,* 59 N. E. 309; *Skinner* v. *Norman*; *Kitchner* v. *Machine Co.,* 135 N. Y. 182, 31 N. E. 1104; *Finley* v. *Ins. Co.,* 30 Pa. St. 311; *Reynolds* v. *Insurance Co.,* 47 N. Y. 597; *Home Ins. Co.* v. *Sylvester,* 57 N. E. 991; *Rodgers* v. *Ins. Co.,* 121 Ind. 570, 23 N. E. 498-330, 38 N. E. 417; *Ins. Co.* v. *Leon,* 138 Ind. 636, 37 N. E. 58; *Bowels* v. *Ins-Co.,* 133 Ind. 106, 32 N. E. 319, 20 L. R. A. 400; *Phoenix Ins. Co.* v. *Golden,* 23, N. E. 503; *Germania Fire Ins. Co. of N. Y.* v. *Hicks,* 17 N. E. 792; *Insurance Co.* v. *Wright,* 22 Ill.. 462; *Ins Co.* v. *Fish,* 71 Ill. 620; *Eggleston* v. *Council Bluffs Ins. Co.,* 21 N. W. 152; *Beal* v. *Park Fire Ins. Co.,* 82 Am. Dec. 719.

It was proper for the court to order a reformation of the policy whether George Buck and E. Mayfield were agents of the company or not.

The proposition of reformation seems to be the one against which counsel for appellant has centered his heaviest artillery. If a careful analysis of the authorities cited for appellant is made, it will be seen that they announce in many different ways simply the general principles underlying reformation of instruments. These are fundamentals that necessarily control in any given case as in the record in the particular case. Counsel has also appreciated the importance of this, and has laboriously cut up the record to convince the court that the Shelby Steele agency had acted directly and without qualification whatsoever, on the positive assurance of George Buck, who alone represented Mrs. Anderson, that the cotton was then in the brick compartments. In order to defeat reformation in this case, appellant must maintain the following propositions: First: George Buck and E. Mayfield must be held to be the agents of Mrs. Anderson, absolutely and without qualification. Second: George Buck must have told

Shelby Steele as Mrs. Anderson's agent alone, that the cotton was to be placed in the brick compartments, and nowhere else, without any intimation whatsoever that it may be placed elsewhere and, Third: Shelby Steele's agency must have acted on what George Buck told Mr. Steele, as Mrs. Anderson's agent alone, and must not have assumed to locate the cotton themselves.

It can, therefore, be readily observed that the facts in this case must necessarily control the court in determining whether the reformation was proper. We do not find that our court has adopted any different rule regarding the reformation of instruments than other courts generally. We might examine briefly some of the cases which counsel cite. The case of *St. Paul Fire & Marine Ins. Co.* v. *McQuaid,* 114 Miss. 430, has little bearing on this case now before the court. It was controlled simply by its own peculiar state of facts. Judge COOK said: "The real question is, did Mrs. McQuaid's testimony taken in connection with all the evidence, warrant the decree?" Further: "The person to whom was delegated the power to change or write new policies knew nothing of the conversation, and wrote the policy binding this company without mistake and exactly as she intended to write it."

The difference between this McQuaid case and this case is that Miss Smith while she did not hear the conversation between George Buck and Shelby Steele, she telephoned to the Compress to ascertain the location of the cotton so that she could properly insure it, and acted on information which was given to her by some third party. Of course, she wrote in the policy what she intended to write, if you mean by this simply the wording of the policy; but she did not write into the policy what she intended to write, when you mean the proper location of the cotton, which she had sought to obtain. Right here is the distinction which we wish to impress upon the court.

This distinction is announced clearly in the case of *Miles* v. *Miles,* 84 Miss. 624, 37 So. 112: "To hold that a court of equity could not correct mistakes for the reason alone that the parties use terms they actually intended to use would be to curtail its powers to an unheard of extent. Most mistakes of fact in conveyancing, except those caused by clerical misprison, arise in cases when descriptive terms are intentionally employed under the mistaken impression that they apply to the property sought to be conveyed."

This rule was followed strictly in the case of *Brimm* v. *McGee,* 80 So. 379: "It is not what description the parties intended to write, but what property the parties intended to have embraced in the description they used."

To deny reformation simply because it may be said that Miss Pearl Smith, of the Delta Insurance and Realty Agency intended to write into the policy in this case the "Brick compartments" would be contrary to equity, and would announce a rule that would "curtail its powers to an unheard extent."

The case of *Miles* v. *Miles, supra,* and *Brimm* v. *McGee, supra,* are not out of harmony with the other decisions of this state, many of which opposing counsel have cited in his brief.

An examination of the case of *Jones* v. *Jones,* 88 Miss. 784, an authority in the McQuaid case, shows that the Jones case was reversed because the number of acres was the only important matter determined on in advance and that the description was written so that it would embrace the specific acreage, and not that it might include any particular tract of land."

The location of Mrs. Anderson's cotton was of vital concern to all the parties who handled this policy. Miss Smith realized this, and whether she telephoned to the Compress because Mr. Steele had requested her to do so, after having instructions from George Buck to properly locate the cotton, or not, the simple facts re-

main that she did make an effort to ascertain whether Mrs. Anderson's cotton was in the wood or brick compartments. She was not trying to write a blanket policy to cover this cotton wherever located; she was trying to write the cotton where it was actually located, and from her own testimony (parts of which we have already quoted in this brief) she would have written in the brick compartments at a cheaper rate if she had known it was in the brick compartments. The minds of all the parties met on this one thing to insure the cotton where it was located. This is made clear without any positive shadow of a doubt, and brings this case clearly within the general rules applicable to reformation.

See the following cases: *Brenner* v. *Insurance Company*, 99 Mo. App. 718, 74 S. W. 506; *Yoch* v. *Home Mutual Insurance Company*, 111 Cal. 503, 34 L. R. A. 857; *Union Ins. Co.* v. *Wilkinson*, 20 Law Ed. (U. S.), 617, *supra*; 14 Ruling Case Law, page 1185.

It will be seen from the record, that not until after suit was brought by Mrs. Anderson, was any offer made to return the premium, and this offer was made by Mr. Arminstead, attorney for the appellee. We did not require him to make any actual tender, and of course, refused to accept the refund of premium. It is important to note, however, that the fire was on March 13, 1918. Mr. Steele's agency knew that the cotton of Mrs. Anderson was burned, and the adjuster for the company refused to furnish proofs of loss to Mrs. Anderson's attorneys, and yet no offer to return the premium was made until after Mrs. Anderson filed suit and the company had employed an attorney. This should constitute a waiver on the part of the company. *Mechanics, etc., Ins. Co.* v. *Smith* 79 Miss. 142, 30 So. 362; *Mississippi Home Ins. Co.* v. *Dobbins*, 81 Miss. 623; *American Central Ins. Co.* v. *Antram*, 86 Miss. 224.

The chancellor found with the facts before him a value for the cotton lost. It is rather late in the day

to contest the value, when appellant offers no evidence whatever as to the value, to refute the testimony on behalf of appellee. No motion was made to the chancellor to have the values determined, and when the grades are fixed definitely, and appellant offers no testimony to lessen the value placed upon the cotton by Mr. McShane, an experienced cotton man, then we submit it is rather late in the day to seek a reversal merely on such a technical ground.

The importance of this case to our client has doubtless caused us to lengthen our argument much farther than it should be.

Holden, J., delivered the opinion of the court.

This is a suit in chancery to reform an insurance and to recover thereon six thousand dollars for the loss of cotton destroyed by fire belonging to the appellee, Mrs. A. C. Anderson. The chancellor sustained the bill upon two grounds: First, that there was a mutual mistake in the policy in describing the location of the cotton insured; and, second, that the appellant insurance company was estopped from denying liability for the reason that it accepted the risk upon its independent investigation of the location of the cotton before issuing the policy. From this decree the insurance company appeals here.

It appears that the appellee, Mrs. A. C. Anderson, had stored at Tchula, Miss., twenty-eight bales of cotton. In order to secure better storage facilities, she arranged to have the cotton shipped to the Tallahatchie Compress & Storage Company at Greenwood, Miss. It had been her custom to insure her cotton through the insurance agency known as "E. Mayfield," which consisted of Mr. E. Mayfield and George Buck, located at Tchula. It seems that the territory in which the E. Mayfield agency could insure property was limited, but for many years

they had been renewing insurance on their clients' property, when moved from Tehula, through the Delta Insurance & Realty Agency at Greenwood, Miss., of which agency Mr. Shelby Steele was president and manager. In this arrangement both agencies shared equally in the commissions of the business handled.

The Tallahatchie Compress & Storage Company was the owner of a compress in Greenwood for storage of cotton which afforded brick compartments. There were also frame sheds connected with the compress, outside of the brick compartments, under which cotton was often stored. The E. Mayfield agency had been led to believe that the Anderson cotton, upon its arrival at Greenwood, would be placed in the brick compartments, and when the shipment of Mrs. Anderson's cotton was about to be made, Mr. George Buck, of the Mayfield agency, called up Mr. Shelby Steele, of the Delta Insurance & Realty Agency, agent of appellant, to arrange to insure the cotton at Greenwood. Mr. Buck stated to Mr. Steele in this telephone conversation, which was also heard by Mr. Mayfield, that he understood the Anderson cotton was to be placed in the brick compartments of the compress, but to be sure and find out its location and cover the cotton with a policy wherever it was located. This conversation was partly denied by Mr. Steele. However, the chancellor was warranted in finding as a fact that Mr. Buck did instruct Mr. Steele over the telephone to locate the cotton, wherever it might be, and there insure it.

Immediately following this conversation over the telephone Mr. Steele requested Miss Smith, the active manager of the Delta Agency, agent of appellant, to find out where the cotton was located and to issue a policy of insurance upon it. Miss Smith thereupon telephoned to the Compress Company to ascertain where this cotton was stored, and it seems that the compress superintendent informed her it was stored in the brick com-

partments of the compress. Acting upon this independent investigation and information received, Miss Smith, the agent of the insurance company, issued the policy involved in this suit. It developed afterwards, when the cotton was burned, that it was stored in the frame sheds of the compress, and not within the brick compartments, as written in the policy. The rate of premium for the insurance was considerably less an occount of the supposed fact that the cotton was within the brick compartments, and not under the adjacent frame sheds.

Neither the appellee, nor Mayfield, nor Buck misinformed or misled the insurance company with reference to the location of the cotton at the time the policy was issued. Mr. Buck had instructed Mr. Steele, in substance that he understood the cotton was to be placed in the brick compartments of the compress, but specifically told Mr. Steele to locate the cotton for certain and insure it where located; and the agent, Miss Smith, thereupon undertook, independently for the insurance company, to locate it, and insured it as being located in the brick compartments.

The contention of the appellant insurance company is that the policy cannot be reformed under the facts in this case, because there was no mutual mistake between the parties to the contract of insurance; and, second, that estoppel cannot apply as against appellant, because it did nothing which would preclude it from relying upon the insurance contract as it is written.

We think the contentions of the appellant are not maintainable. Whether we say that the written contract should be reformed, so as to state the true agreement mutually understood between the parties, or whether we say that recovery by the appellee may be had upon the policy as written, because the appellant was estopped from denying that the cotton insured by the terms of the written policy, regardless of its location, was in fact the cotton which was intended to be insured by both

parties to the contract, would make no difference, as the result of the suit would be the same.

It seems clear to us that the chancellor was correct in his decree upon either of the theories mentioned. However, we have no hesitation in holding that the recovery by the appellee was proper, at least upon the ground of estoppel. Viewing the facts as a whole in this record, the obvious conclusion must be reached that the insured, not knowing whether the cotton was stored in the brick compartments or in the frame sheds, plainly instructed the agent of appellant, through Buck, to first locate the place where the cotton was, or would be, stored, and then to insure it there. The agent of the insurance company undertook to do this, and, acting upon an independent investigation made by the agent, the cotton was insured by the policy as being located in the brick compartments, when as a matter of fact it developed that the cotton was in the frame sheds. The appellee did not know, and did not concern herself with, the location of the cotton after these instructions were given to the insurance company, and the policy was accordingly issued to her. Certainly the insurance company can not now be heard to say that it did not insure the cotton belonging to appellee wherever it was in fact stored.

The judgment of the lower court is affirmed.

*Affirmed.*