## CAPITAL PAINT & GLASS CO. v. ST. PAUL MERCURY INDEMNITY CO.

(Division B. Nov. 15, 1937. Suggestion of Error Overruled Jan. 10, 1938.)

[176 So. 729. No. 32871.]

Harold Cox, of Jackson, for appellant.

**Watkins & Eager**, of Jackson, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant brought this action against appellee in the circuit court of Hinds county on an indemnity insurance policy, issued by the latter to the former, to recover the sum of $806. At the conclusion of appellant's testimony, on motion of appellee, it was excluded, and verdict and judgment directed for appellee. From that judgment appellant prosecutes this appeal.

In considering the propriety of the directed verdict we shall, as required by law, treat all material facts as proven which the evidence establishes either directly or by reasonable inference. Appellant's business is indicated by its name and so is that of appellee. On January 5, 1935, appellee issued to appellant an indemnity policy with a maximum liability of $10,000. By the terms of the policy appellee undertook to indemnify and save harmless appellant from any loss it might suffer on account of personal injuries to its employees caused by its negligence. One of appellant's employees was one Rhymes; his duties required him to travel in an automobile which appellant furnished. Rhymes was seriously injured in a collision with another automobile on the night of September 16, 1935. The collision was caused by defects in the lights and steering assembly of the automobile Rhymes was driving. His injury required hospitalization for several weeks, and entirely disabled him from work for seven or eight months.

On the 18th day of April, 1936, appellant, out of funds furnished by appellee for that purpose, paid Rhymes the sum of $1,578.20 in full settlement of appellant's liability to him for the injury. In the meantime, pending the negotiations leading up to this settlement, appellant had paid Rhymes his regular salary of $26 a week during his disability. This continued for thirty-one weeks, aggregating $806, the amount involved in this suit. The period of investigation and negotiations looking to a settlement of the matter covered substantially that period. Such negotiations were in charge of three different persons, Aycock, McCormick, and Dowd, who were called upon to do the work by the local agency through which the policy was written. They all agreed for their principal that appellant should continue to pay Rhymes his weekly wages. This agreement continued for thirty-one weeks. They also agreed that any adjustment and settlement made by appellee with Rhymes should ex-

clude this $806, for which appellee would reimburse appellant. In other words, in addition to what appellee might pay Rhymes in settlement it would reimburse appellant for this outlay of $806.

The evidence tended to show that the acceptance by Rhymes of the $1,578.20 was upon condition that appellee would reimburse appellant for the $806. Rhymes offered to testify to that effect, but the court ruled his testimony out. As we understand the arguments, the court placed its ruling upon the following provisions of the policy:

"4. The Assured shall not voluntarily assume any liability, nor incur any expense (other than for immediate surgical or medical relief), nor settle any claim, except at the Assured's own cost. The Assured shall not interfere in any negotiation for settlement, nor in any legal proceeding, but, whenever requested by the Company, and at the Company's expense, the Assured shall aid in securing information and evidence and the attendance of witnesses, and shall co-operate with the Company (except in a pecuniary way) in all matters which the Company may deem necessary in the defense of any suit or in the prosecution of any appeal."

"12. No change in the Agreements, Conditions or Declarations of this Policy, either printed or written, shall be valid unless made by endorsement, signed by the President, a Vice-President, Secretary or an Assistant Secretary of the Company, nor shall notice to, or knowledge possessed by, any agent or any other person, be held to waive, alter or extend any of such Agreements, Conditions or Declarations. Upon the acceptance of this Policy the Assured agrees that its terms embody all agreements then existing between the Assured and the Company or any of its agents relating to the insurance described herein."

It is true that no express authority from appellee was shown for the investigation and acts leading to an ad-

justment by Aycock, McCormick, and Dowd. The evidence does show, however, that they assumed to act, and as a result thereof the adjustment and settlement was made, and accepted and ratified so far as the payment of the $1,578.20 was concerned. The position of appellee is that under the provisions of the policy, quoted above, they had no authority whatever to bind it to reimburse appellant for the $806. That is true if those provisions of the policy are to control. The trouble about that contention is that under section 5196, Code of 1930, they do not control—they are excluded from the policy by the law. The statute provides, among other things, that every person "who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract."

The adjusters under the statute had the same authority that appellee itself had. Big Creek Drug Co. v. Stuyvesant Ins. Co., 115 Miss. 333, 75 So. 768; Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653; Agricultural Ins. Co. v. Anderson, 120 Miss. 278, 82 So. 146; Lamar Life Ins. Co. v. Kemp, 154 Miss. 890, 124 So. 62.

The case of Mutual Life Ins. Co. v. Hebron, 166 Miss. 145, 146 So. 445, is not in point for appellee. The agent in that case undertook to make no agreement for his principal, he merely expressed an opinion.

Reversed and remanded.