ST. PAUL MERCURY & INDEMNITY CO. *v.* RITCHIE.

(In Banc. Nov. 25, 1940. Suggestion of Error Overruled Dec. 23, 1940.)

[198 So. 741. No. 34280.]

Wallace & Greaves, of Gulfport, for appellant.

**White & Morse,** of Gulfport, for appellee.

Argued orally by **R. A. Wallace**, for appellant, and by **W. H. White**, and **S. E. Morse**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

There was issued and delivered to the appellee, who owned and operated a dairy farm in Harrison County, Mississippi, a certain indemnity insurance contract, dated March 19, 1938, known as a ''Standard Employer's Liability Insurance Policy,'' by the terms of which the appellant obligated itself to indemnify and save harmless the appellee, as an employer, from any loss on account of personal injuries to her employees who were covered by the policy, where such injuries were caused by the negligence of the employer, and within the limits of the maximum liability therein stipulated; also to furnish at

the cost and expense of the said insurer, through a physician or a hospital designated by it, such medical, surgical, hospital and ambulance service as might be necessary for the treatment of any injury sustained by any one employee of the assured, covered by the provisions of the policy, in any one accident, subject to an aggregate sum and limit of $500.

The insurance contract of indemnity further obligated the appellant to investigate accidents involving injuries to employees covered by the policy, and to defend suits for damages, even if groundless, brought on account of such injuries in the name and on behalf of the assured unless and until the insurance company should elect to effect a settlement thereof; also to pay all costs taxed against the assured in any legal proceeding, defended by the insurer according to the foregoing obligation, and to pay the interest accruing until the date of payment by the insurer of its share of the judgment rendered in connection therewith.

On May 12, 1938, while the insurance contract was in full force and effect, one M. E. Moore, the husband of a deceased sister of the appellee, was an employee covered by the terms of such contract, when he was severely injured while about the duties of his employment. At the time of the accident and injury, the appellee was out of the State, but under a previous arrangement which she had made with a local physician to render medical services to said M. E. Moore whenever needed, he was taken to this physician by another employee a day or two after the injury and placed in his charge for professional treatment at the physician's home, where he remained several weeks, at an expense of $871.25 for medical and surgical attention, and in a further sum of $704 for nurse hire.

The insurance contract also provided that ''the assured shall not voluntarily assume any liability, nor incur any expenses (other than for immediate surgical and

medical relief), nor settle any claim, except at the assured's own cost," but which provision we interpret to mean that if the assured should assume any liability for medical, surgical, hospital and ambulance service for an injured employee (other than for immediate surgical and medical relief), the entire expense would be at the assured's own cost, subject to the rights to be reimbursed under the contract of indemnity to the extent of $500 therefor.

While the injured employee was still undergoing treatment, the physician informed M. J. Dowd, claims adjuster of the appellant, as to the probate expense that would be entailed in connection therewith. Thereupon, the claims adjuster wrote a letter to the assured and to her husband on July 25, 1938, stating that he had been advised that the medical expense in the case would be approximately $1,200, and that "inasmuch as our policy limits coverage to the amount of $500, we wish to advise that we are handling the matter under full reservation of our policy contract and that any further investigation made by us is not to be construed as an admission of liability."

Thereupon, the investigation of the accident and injury continued, and, within a few days thereafter, the injured employee gave a written statement to a representative of the insurance company to the effect that on the day of the accident, he was working at a work bench which had a top surface of about two by twelve feet in dimension and was about "waist high" from the floor, that he had a steel bar about seven feet long and about one and one-half inches in diameter, weighing about one hundred pounds (a drive shaft out of an old truck), which he leaned up against the work bench with one end on the floor and the other end up in the air at such an angle that it leaned on the work table, and that as he went on with his work at the other end of the table where he was operating a vise, the steel bar fell on his foot, and in explaining the acci-

dent he said: "I guess I must have shook the table while I was working at the vise for the iron bar fell and the end of it struck me across the toes of my left foot." No one else was present at the time of the accident.

It was further shown that on September 29, 1938, after, the injured employee had returned to the dairy farm, the claims adjuster, M. J. Dowd, called there to see him, and, in the presence of Capt. L. P. Ritchie, husband of the, assured, who was acting as her agent in the matter, obtained a written release signed by the injured employee, which recited, among other things, the following: "That for and in consideration of the sum of $20, this day cash in hand paid to me by L. P. Ritchie and Mrs. M. C. Ritchie, receipt of which sum is hereby acknowledged, and in consideration of the sum of $87 paid to me as wages, or salary, during the time that I was incapacitated because of injuries received as described below, the receipt of which sum is also acknowledged, I, the undersigned M. E. Moore, do hereby save, fully release, acquit and discharge L. P. Ritchie and Mrs. M. C. Ritchie, their heirs, representatives or assigns, from any and all liability for any and all claims for damages which I may now or hereafter have on account of personal injuries sustained by me on or about May 12, 1938, when I was employed by L. P. Ritchie and Mrs. M. C. Ritchie, and when I was engaged at my work at a work bench on the place of Mr. and Mrs. M. C. Ritchie in Harrison County in Mississippi." The instrument then proceeds to recite the facts as to how the accident occurred, as heretofore stated. It was then further stipulated therein, as follows:

"It is agreed and understood that this settlement shall operate as and shall be a complete accord, and satisfaction, and is a full acquittance in consideration of a full and complete settlement of any and all claims for damages of every kind, character or description, whether herein specifically described or not, which I may now or hereafter have on account of or in any way connected with the above-described accident.

"It is further agreed and understood that in making this settlement no statements, promises or representations, other than those made herein, have been made to me by L. P. Ritchie or by Mrs. M. C. Ritchie, or by anyone for either of them, as a part of the consideration for this release, or for the purpose of inducing me to execute the same."

At the trial, it was shown by the testimony on behalf of the appellee, over the objection of appellant, that contemporaneously with the execution of the said release, and as an inducement thereto, the claims adjuster made an oral agreement with the injured employee and with Capt. Ritchie, agent and representative of the assured, as aforesaid (and who says he approved and accepted the release on her behalf), to the effect that the appellant indemnity company would take care of the entire expense incurred for medical and surgical treatment and nurse hire hereinbefore mentioned, so that Mrs. Ritchie would have no expense in connection therewith; and that the injured employee, M. E. Moore, would not agree to sign the release until the claims adjuster had given him that assurance.

The insurance contract, which was filed as an exhibit to the declaration, also contained a provision to the following effect:

"12. No change in the Agreements, Conditions or Declarations of this Policy, either printed or written, shall be valid unless made by endorsement, signed by the President, a Vice-President, Secretary or an Assistant Secretary of the Company, nor shall notice to, or knowledge possessed by, any agent or any other person, be held to waive, alter or extend any of such Agreements, Conditions or Declarations. Upon the acceptance of this Policy the Assured agrees that its terms embody all agreements then existing between the Assured and the Company or any of its agents relating to the insurance described herein."

In this connection, it is insisted by the appellant that the terms of the written contract of indemnity cannot be changed, contradicted or modified by a subsequent oral agreement, without an additional consideration supporting the new agreement, citing the cases of Edrington v. Stephens, 148 Miss. 583, 114 So. 387; Pritchard v. Hall, 175 Miss. 588, 167 So. 629. In response to this contention, the appellee relies upon Section 5196 of the Code of 1930, and also asserts that she was entitled to show the true consideration for the execution of the release without violating the rule prohibiting the contradiction of or adding anything to the terms of a valid written instrument. These respective contentions will be hereinafter discussed.

Appellee plead the oral promise and agreement of the claims adjuster to take care of the entire expense for medical and surgical treatment and nurse hire, as a part of the consideration for the execution of the written release. Appellant replied thereto by alleging the want of authority on the part of the claims adjuster to obligate the appellant to pay more than the $500 maximum liability stipulated for in the contract of indemnity in that behalf.

After the execution of the release in question, the appellee failed to pay this expense for which she had obligated herself to the physician, and with the result that she was sued by him and the nurse, and judgments were recovered against her by them, respectively, for the amounts alleged to be due each, and which judgments and costs she later paid, prior to the institution of the present suit. The appellant's attorneys appeared and defended the two suits filed against the appellee, and after the termination thereof tendered unto her, both before and after the institution of the present suit, that part of the judgments which it conceived itself to be obligated to pay in the sum of $500, plus interest and court costs in the said two suits, and requested an instruction in the case at bar

limiting its liability to the amount of said tender; but the jury was instructed peremptorily to find for the appellee in the sum of $1,633.85 covering the whole amount of the two said judgments, interest and costs; and from which action of the court the appellant prosecuted this appeal.

To sustain the judgment appealed from, the appellee relies, as heretofore stated, first, upon Section 5196 of the Mississippi Code of 1930, which provides, among other things, that ''every person . . . who shall examine into or adjust or aid in adjusting any loss for or on behalf of any insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or any other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract;'' and, second, upon the right to show by parol the true consideration of the release in question.

The position first above mentioned would be well taken under the authority of the cases of Capital Paint & Glass Company v. St. Paul Mercury Indemnity Company, 180 Miss. 341, 176 So. 729; Interstate Life & Accident Insurance Company v. Ruble, 160 Miss. 206, 133 So. 223; Lamar Life Insurance Company v. Kemp, 154 Miss. 890, 124 So. 62; and Mutual Life Insurance Company v. Vaughan, 125 Miss. 369, 88 So. 11, except for the fact that those cases were, on Nov. 11, 1940, expressly overruled by the Court in the case of Carmelita Saucier v. Life & Casualty Insurance Company of Tennessee, Miss., 189 Miss. 693, 198 So. 625, in so far as the same could in anywise tend to sustain the position of the appellee in regard to the application of said Section 5196, supra, to the facts of the present case. The Saucier case holds that: ''The words 'as to all the duties and liabilities imposed by law' ex vi termini refer not to duties and liabilities that grow

out of the contract of insurance, such duties and liabilities being determined by the provisions of the contract itself, but to duties and liabilities imposed on insurance companies and their agents by law outside and independent of the provisions of the contract of insurance.

The case chiefly relied upon by the appellee is that of Capital Paint & Glass Company v. St. Paul Mercury Indemnity Company, supra, wherein the contract of indemnity there sued on was in the same language as that here involved, and wherein the adjusters agreed that any adjustment and settlement made by the indemnity company with the injured employee should exclude the sum of $806 which had been paid by the employer to the injured employee as his regular salary during his disability, pursuant to an agreement with the adjusters, and for which said sum the adjusters agreed that the indemnity company would reimburse the employer. A cash settlement was made with the employee, but the indemnity company refused to reimburse the employer for the wages as promised by the adjusters. In the course of its opinion in that case, the Court stated that [180 Miss. 341, 176 So. 731]: ''The position of appellee [indemnity company] is that under the provisions of the policy, quoted above [including Section 12 thereof], they [the adjusters] had no authority whatever to bind it to reimburse appellant for the $806. That is true if those provisions of the policy are to control.'' The Court then proceeded to apply Section 5196, supra, and held that the provisions of the policy relied upon by the indemnity company were excluded from the policy by the statute. When we now eliminate the statute, under the authority of the Saucier case, supra, we must hold that the provision of the policy, which, in the case at bar, limits the liability of the insurer to the sum of $500 for expenses incurred for medical, surgical, hospital and ambulance services is controlling here, and we must therefore look to the general law of agency to determine whether or not the ad-

juster in the present case had authority, in making the settlement with the injured employee, and obtaining the written release, to make either a supplemental oral or other agreement on behalf of the indemnity company to pay any expenses for such services in excess of the $500 maximum limitation fixed by the contract of insurance. Under the general law of agency no agent or representative of the indemnity company had authority to modify or enlarge its liability under the policy other than those named in Section 12 thereof, hereinbefore quoted, in the absence of proof of special authorization so to do; and no such special authority was shown to have been conferred upon the claims adjuster. Nor was it within either the real or apparent scope of his authority as an adjuster to obligate the insurer to pay more than the maximum liability of $500 provided for in the indemnity contract to defray the expenses incurred for medical, surgical, hospital and ambulance services. Moreover, we are of the opinion that the provision contained in the written release to the effect ''that no statements, promises or representations other than those made herein have been made to me by L. P. Ritchie or Mrs. M. C. Ritchie or by anyone for either of them, as a part of the consideration for this release, or for the purpose of inducing me to execute the same'' is contractual in its nature, and that therefore no oral testimony was admissible to show that in truth and in fact other statements, promises or representations were made as an inducement thereto. The testimony admitted on behalf of appellee to show a contemporaneous oral promise to pay medical, surgical and hospital expenses, etc., in excess of the obligation of the indemnity contract and in addition to the consideration expressed in the written release signed by the injured employee, sought to import into the writing a contractual obligation not stipulated for therein, and in contradiction of the written agreement signed by the injured employee and accepted by Capt. Ritchie

on behalf of the assured to the effect that there were no promises made to induce the execution of the release other than those stated therein. The objection to this testimony should have been sustained. Baum v. Lynn, 72 Miss. 932, 18 So. 428, 30 L. R. A. 441; Thompson v. Bryant, 75 Miss. 12, 21 So. 655; English v. New Orleans & N. E. R. Co., 100 Miss. 575, 56 So. 665; and Dodge v. Cutrer, 101 Miss. 844, 58 So. 208. The essential elements of the release involved in the case of English v. New Orleans & N. E. R. Co., supra, were the same as those contained in the one here in question, and in that case it was held that it was not competent for the injured employee to prove that as a part of the consideration for the release signed by him the railroad company made a contemporaneous oral agreement to give him "his regular work as soon as he sufficiently recovered," etc. The rule against the admissibility of the evidence referred to is likewise fully sustained by the other cases last above cited.

Therefore, it necessarily follows that the appellant was entitled to the peremptory instruction limiting its liability to the sum of $564.85, covering the said $500 liability, plus the interest and court costs accrued in connection with the two judgments recovered against appellee, hereinbefore mentioned, and as tendered by the appellant herein. Judgment is therefore rendered here accordingly, and the appellee is taxed with all costs, for the reason that the tender was made prior to the institution of the suit.

Reversed and judgment here accordingly.

### DISSENTING OPINION.

**Ethridge, J.,** delivered a dissenting opinion.

For the reasons given in my dissent in Saucier v. Life & Casualty Insurance Company, 189 Miss. 693, 198 So. 625, I dissent in this case. The Legislature, having re-enacted Section 5196 of the Code of 1930 after it had been construed by the Court, adopted that construction, and the Court after such re-enactment is without power to change its construction. See authorities in that dissenting opinion.