GRAVLEE v. NEW YORK LIFE INS. CO.

(In Banc. November 24, 1947.)

[32 So. (2d) 569. No. 36590.]

522

C. R. **Bolton**, of Tupelo, for appellant.

Watkins & Eager, of Jackson, **John R. Anderson**, of Tupelo, and **Ferdinand H. Pease**, of New York City, for appellee.

Argued orally by **C. R. Bolton**, for appellant, and by **Mrs. Elizabeth Hulen**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

On September 27, 1924, the appellee, New York Life Insurance Company, issued and delivered to the appellant, Guy J. Gravlee, two policies of insurance on his life in the sum of $2,000 each, which are identical except as to the number. They are what is commonly known as ordinary life policies, and as originally written they provided for the payment of semi-annual premiums in the

amount of $26.06 each. The insured paid all of the premiums on these policies as they became due, and left the annual dividends with the company for a period of twenty years, at the expiration of which time he demanded the issuance to him of "Paid-Up" policies, or that the company should mark the originals as being "Paid-Up" policies, on the ground that he had been advised by the insurance company from its Jackson Office that in such event he would be entitled thereto.

The above mentioned demand was predicated upon the following state of facts, to-wit: That shortly prior to September 10, 1927, the insured began negotiations with the company for the addition of disability and double indemnity benefits to the policies, and had received information from some source that if he left the dividends with the company the insurance would mature as paid-up policies within twenty years; that therefore on the said September 10, 1927, he addressed and mailed to the Jackson Branch Office of the company the following letter:

"Re: Pols., 8-852-809-10.

"New York Life Insurance Co.,

"Jackson, Mississippi.

"Gentlemen:

"Answering your letter of the 1st, with reference to the above policies.

"Since I wrote you, I have been discussing the matter of maturity of the above policies, and I am advised that these policies will mature as a paid up policy within twenty years, provided the dividends are left with the Company, and I would thank you to advise me if I have been correctly informed. If so, I would like to have the double indemnity benefit and also the one per cent disability clause attached to my policies, and leave them just as they stand, provided they will mature within twenty years.

"Thanking you to advise me, I am
Yours very truly,

"G. J. Gravlee."

While this letter discloses on its face that there had been a previous exchange of other letters between the insured and the insurer, they were not introduced in evidence. The failure of the insurance company to introduce the same was accounted for by the fact that the correspondence of policyholders with the local agencies such as the Jackson Branch Office is not preserved longer than a period of three years. But, the proof on behalf of the insured does show that on September 13, 1927, the following reply was made to the foregoing letter of September 10, 1927:

"New York Life Insurance Company
"Darwin P. Kingsley, President
"Jackson Branch Office
"235 West Capitol Street, Jackson, Miss.
"C. O. Wilkins, Agency Director,
"Emmel Golden, Agency Organizer,
"C. E. Randall, Cashier.

September 13, 1927.

"Mr. Guy J. Gravlee,
"Nettleton, Miss.
"Dear Sir:

"Re: Pol. # 8 852 809—10.

"We have received your letter of the 10th instant, and in reply we would advise you that you are correct in your assumption that your above policies will become paid-up in twenty years if all dividends are left with the Company.

"Since you state you desire to have the 1% Disability Benefit and Double Indemnity Feature inserted in your above policies, we will ask that you complete the form No. 926—13, which we sent to you with our letter of the 1st instant, and have the form No. 925—8 executed by the Company's Examiner in your City, without expense to the Company. We have already requested our Memphis

Branch Office to advise you the name of the Company's Examiner in your City.

"After the above forms have been completed, kindly return to this office with your policies, and we will submit the same to our Home Office in New York City for the necessary attention.

"Yours very truly,

"C. E. Randall,

"Cashier.

"ER."

It appears from the caption of the foregoing letter that the Jackson Branch Office is an agency office instead of being one for the issuance of contracts of insurance; and it appears from the body of the letter that substantial changes in the benefits to accrue under the policies would require the attention of the home office; and the signature to the letter discloses that the author thereof was merely the local cashier.

Moreover, the two original policies show on their face that the same were ordinary life policies, and that applications signed by the insured, and made a part thereof, contained the following language: "It is mutually agreed as follows: . . . (3) That only the President, a Vice-President, a second Vice-President, a Secretary, or the Treasurer of the Company can make, modify or discharge this contract or waive any of the Company's rights or requirements. . . ."

Pursuant to the letter of September 13, 1927, hereinbefore quoted, the insured executed the forms therein mentioned, mailed the same together with the original policies to the said Jackson Branch Office, to be forwarded to the home office, and with the result that the disability and double indemuity benefits were added to the policies at the home office in New York, on October 13, 1927, and the semi-annual premiums were therefore increased, with the consent of the insured, to the sum of $30.18 on each of said policies, and the policies returned to the insured with such indorsements duly endorsed

thereon by the President and the Secretary of the Company. These increased premiums were thereafter paid throughout the remainder of the twenty-year period from the date of the policies, the consideration for such increase in premiums being the additional benefits which were added, and the consideration for leaving the annual dividends, which were to be fixed annually by the board of directors, was the interest to be paid thereon at not less than 3% per annum as provided for by the terms of the said policies.

The insured insists, however, that the consideration for his having caused the additional benefits to be added, and for leaving his annual dividends with the company for the said period of twenty years was the fact that he was assured in the said letter of September 13, 1927, that his policies would become paid-up in twenty years if all of the dividends were left with the company. However, the right to have the supposed contract, which is alleged to be disclosed in the two letters hereinbefore quoted, specifically performed as prayed for in the bill of complaint, depends primarily upon whether or not the cashier in the Jackson Branch Office of the insurance company was authorized to bind his company by the said letter of September 13, 1927.

To avoid the effect of the provision of the original contracts which provides that "only the president, a vice president, a second vice president, a secretary or the treasurer of the company can make, modify or discharge this contract or waive any of the company's rights or requirements," the insured takes the position that the agreement which the two letters purport to disclose did not amount to a modification of the original contracts, or a waiver of any of the company's rights or requirements thereunder, since the amount of the annual dividends to be declared are uncertain, and the policy itself provides that the dividends may be used "to shorten the premium paying period." But, we are unable to agree with the contention that to compel the insurance company

to carry out the interpretation given by the branch office cashier as to the rights of the insured under these policies does not amount to a modification of the original contracts and a waiver of the company's rights or requirements thereunder. There is no escape from the conclusion that this interpretation would serve to convert these two ordinary life policies into twenty-year paid-up policies. And, the undisputed proof discloses that such a conversion would have required the payment of $65.15 in cash on each of the policies in September 1927, and a semi-annual premium until 1944 of $42.12 on each of them, if the disability and double indemnity benefits were added, instead of the payment that is being made by him of $30.18 semi-annually.

No application was ever sent to the home office in New York after the Actuary there had advised the Jackson Branch Office on August 30, 1927, that the insurance contract could be changed to twenty-year paid-up policies, and, also, endorsed for disability and double indemnity benefits, for a semi-annual premium of $42.12 each, upon evidence of the insurability of appellant at that time, and the payment to the company in cash for each policy of the sum of $65.15. In other words, the only applications of which the home office of the company was advised, following the communication by it of the above information to the Jackson Branch Office, were the applications for the addition of the disability and double indemnity benefits. These benefits were duly endorsed on the policies at the home office by the president and secretary on October 13, 1927, as aforesaid, pursuant to the execution of the forms referred to in the letter of September 13, 1927, hereinbefore quoted, and the policies were thereupon returned to the insured as modified.

It is therefore urged by the appellee insurance company that any previous negotiations between the Jackson Branch Office and the insured were merged into the written policies, as amended, on October 13, 1927; also that the demand of the insured, which is based upon the two let-

ters hereinbefore quoted, would, if acceded to, amount to an unlawful discrimination between policyholders of the same age and life expectancy, contrary to Section 5681, Code 1942, and would therefore be unenforceable in equity as being contrary to the public policy of this State.

However, we deem it unnecessary to go further than to determine whether or not the cashier in the Jackson Branch Office of the company had the authority to make the contract sought to be enforced, if it is a contract separate and apart from the original policies, as contended for by the appellant, or to modify the original policies of insurance and waive any of the company's rights or requirements thereunder.

It was shown that if the annual dividends under the policies had continued to be as much as they were in 1927, and if the interest rate thereon had remained as much as it was at that time, then at the end of twenty years the cash value of the policies, together with the dividends, and the interest, would have been sufficient to have enabled the company to mark the policies as paid-up at the end of the twenty years. However, the policies clearly stated on their face that the amount of dividends payable to the policyholder would be determined annually by the board of directors, and the policies disclosed that the interest rate, at which dividends left with the company are accumulated, was subject to change as conditions should require, but that the interest was not to be less than 3%, compounded and credited annually.

Therefore, it will be readily seen that a mere cashier in an agency office would have no authority to assure a policyholder that if he would leave his dividends with the company throughout such period he would be entitled to paid-up insurance for the face amount of the policy, when, as a matter of fact, the proof showed without dispute that their cash value, together with all dividends and the interest thereon, was, on September 1, 1944, sufficient to purchase paid-up policies only in the amount of $1,519 each, instead of $2,000.

But, it is urged that the alleged contract disclosed by the two letters in question was a contract with the appellee, New York Life Insurance Company, since the letter of the insured was addressed to the company itself, even though the interpretation of the policies was given by a cashier in the branch office to which the insured's letter was addressed. However, we are of the opinion that if the letter had been mailed to the home office, it would still be true that no employee of the company at such office, other than the officials named in the policies could by a reply to such letter be able to modify or waive any of the terms and conditions of the original contract in the manner here contended for by the insured. Instead of holding this cashier out as having the authority herein contended for, the policies of insurance expressly deny such authority to anyone other than the designated officials mentioned therein, and therefore we think that the judgment of the trial court, in denying specific performance of the alleged contract for the issuance of paid-up policies of insurance at the end of twenty years, was correct, and should be affirmed under the authority of the cases of White v. Standard Life Ins. Co., 198 Miss. 325, 22 So. (2d) 353; St. Paul Mercury & Indemnity Co. v. Ritchie, 190 Miss. 8, 198 So. 741; American Bankers' Insurance Company v. Lee, 161 Miss. 85, 134 So. 836; Continental Cas. Company v. Hall, 118 Miss. 871, 80 So. 335; and Manson v. New York Life Iusurance Company, 229 App. Div. 670, 243 N. Y. S. 579; that the cases of Reliance Life Ins. Company v. Cassity, 173 Miss. 840, 163 So. 508; and Ætna Insurance Company v. Lester, 170 Miss. 353, 154 So. 706, relied upon by the appellant, are not controlling under the facts of the case at bar.

Affirmed.